[Crim. No. 763. Department One.—December 30, 1901.]

THE PEOPLE, Respondent, v. JOHN A. HOWARD, Appellant.

CRIMINAL LAW—FALSE PRETENSES—ATTEMPT TO OBTAIN BOUNTY ON SQUIRRELS—PROCURING FALSE AFFIDAVIT—INVALIDITY OF ORDINANCE.—The crime of attempting by false pretenses to obtain money from the county offered by a county ordinance as a bounty on squirrels killed or destroyed within the county, by falsely representing that squirrels killed elsewhere were killed within the county, and, under an agreement for division of the bounty, procuring a resident citizen to make false affidavit thereto, accompanied by the squirrel-tails, pursuant to the ordinance, is not affected by the invalidity of the ordinance for informality in its passage, especially where it appears that the board of supervisors and citizens of the county acted thereunder, in belief of its validity, which facts were known to the defendant, and that the board was induced by such false pretenses to allow the false claim.

ID.—ESSENCE OF CRIME CHARGED—ILLEGALITY OF ORDINANCE IMMATERIAL.—It was the false pretense, used with intent to defraud the county, and not any defect or invalidity in the ordinance, that constitutes the crime charged; and the illegality of the ordinance

was immaterial. The fact that the ordinance was found to be illegal before the offense of actually obtaining the money by the false pretenses was consummated, cannot prevent conviction of the lesser crime of attempting so to obtain it.

ID.—INSTRUCTION AS TO CIRCUMSTANTIAL EVIDENCE.—An instruction that "there is nothing in the nature of circumstantial evidence that renders it any less reliable than the other class of evidence"; that "a man may as well swear falsely to an absolute knowledge of the facts as to a number of facts from which, if true, the facts on which guilt or innocence depends must inevitably follow," is not prejudicially erroneous, and does not invade the province of the jury.

ID.—INSTRUCTION AS TO TESTIMONY OF ACCOMPLICE.—Where the court gave instructions embodying the provisions of sections 1110 and 1111 of the Penal Code, relative to the testimony of an accomplice, the giving of another instruction on that subject which was not in conflict with those sections is not erroneous.

ID.—EVIDENCE—SACK CONTAINING ADDITIONAL SQUIRREL-TAILS—CONVERSATIONS WITH ACCOMPLICES—HARMLESS RULING.—The court did not err in admitting in evidence a sack containing additional squirrel-tails, brought from the same county; and where witnesses had previously testified, without objection, as to the facts of a conspiracy to have several accomplices, to impose the whole of them upon the county, the admission of evidence of conversations of defendant with such accomplices is harmless.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion.

D. E. Perkins, and J. S. Clack, for Appellant.

Tirey L. Ford, Attorney-General, and C. N. Post, Assistant Attorney-General, for Respondent.

CHIPMAN, C.—Defendant was convicted of the crime of attempting to obtain money under false pretenses. He appeals from the judgment and from the order denying his motion for a new trial.

In January, 1899, the board of supervisors of Tulare County passed ordinance 67, offering a bounty of three cents for any squirrel killed or destroyed within that county. The ordinance required the claims to be supported by affidavit of certain facts, and also provided how and when the claims should be

paid. The affidavit was to be accompanied by the tails of the squirrels claimed to have been killed. It is conceded that the ordinance was invalid, by reason of some necessary formality in its passage being omitted. Briefly, the information charged defendant with having brought into Tulare County from without that county a large number of squirrel-tails, taken from squirrels elsewhere killed, and falsely representing the animals to have been killed in Tulare County, and that defendant attempted to effect his purpose by procuring one Clarkson, a resident of that county, to make the necessary affidavit, present the claims, collect the money, and divide with defendant. It is alleged in the information, and appears by the evidence, that from and after February 1, 1899, claims were allowed and paid, the board of supervisors supposing the ordinance to be valid, and so continued to be allowed and paid up to the time Clarkson presented the claim in question, and the fact that such claims were being allowed and paid was known to defendant and Clarkson. Clarkson's claim was allowed, and a warrant was ordered by the board and was drawn by the auditor, and Clarkson endeavored to obtain the warrant. The evidence tended to show that defendant brought about twelve thousand squirrel-tails from Alameda County to Visalia, with the intention of getting the bounty offered by Tulare County; that the squirrels from which they were taken were not killed in Tulare County; and that defendant, the better to conceal the crime and his own connection with it, procured Clarkson, who had been engaged in killing squirrels in Tulare County, to make up and present a claim for part of the animals, and to find some person or persons to present claims for the balance.

1. The point chiefly relied on by defendant is, that the crime was not made out, because the ordinance was invalid. It is urged that the officers are charged with knowledge of the law; that on its face the claim showed it to be illegal and its payment not warranted by law, and therefore no pretense or representation could be made to the board which could be the basis of a claim; that the false pretenses intended by the statute are such as assert the existence of some fact calculated to impose upon a man of ordinary caution, and which create the credit given the accused; that it being the duty of the board to reject all illegal claims, no crime can be predicated of pretenses which could by no possibility create a credit; that

as the claims showed on their face that they were not entitled to allowance, it must be assumed the officers would do their duty and reject them, and hence there could be no crime, because no one could be injured or deceived. Sections 72, 532, and 664 of the Penal Code are brought into the discussion. Section 72 declares: "Every person who, with intent to defraud, presents for allowance . . . to any . . . county, board, or officer, authorized to allow or pay the same if genuine, any false . . . claim . . . is guilty of a felony." The ordinance being void, and the board, therefore, not being authorized to allow the claim, this section does not apply. Section 532 declares: "Every person who knowingly, . . . by false . . . representations or pretenses, defrauds any other person of money or property, . . . and by thus imposing upon any person obtains credit, and thereby fraudulently gets into possession of money or property, is punishable," etc. Section 664 declares: "Every person who attempts to commit a crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable," etc.

Defendant takes the position that neither of these last two sections reaches the case, for the reason that, whether or not he succeeded in collecting the claim, he could not be punished, because the board had no authority to allow it. He puts an illustration, thus: Suppose defendant had made a claim for killing cattle, and had presented their tails as evidence. Could it be said he was seeking to obtain money by false pretenses, when the board would at once perceive the absurdity of the claim and reject it?

The illustration does not meet this case. The board had the power to offer and pay the bounty, by ordinance legally adopted, the purpose being to rid the county of a destructive pest. The ordinance was believed to be valid, and claims were then being paid under it. That the board failed to observe the formalities necessary to a valid exercise of the power, does not relieve defendant from the criminal intent in seeking to take advantage of the invalid ordinance. The same presumption of knowledge of the law which he seeks to place upon the board attaches also to him, and he must be presumed to have known that he was attempting to obtain money from the county to which the law gave him no right. But this was not the crime with which he was charged and of which he was found guilty.

His crime was in falsely and fraudulently procuring Clarkson
to represent that he had killed the squirrels in Tulare County,
believing that the supervisors would allow his claim if he
succeeded in deceiving them, knowing at the time that they
would not do so if he told the truth as to where the squirrels
were killed. Clarkson had collected claims under the ordi-
nance for killing squirrels in Tulare County, and although the
board exceeded its authority in allowing them, Clarkson was
innocent of criminal intent since he made no false representa-
tions. When, however, he attempted, on his own and on
defendant's behalf, to obtain money from the county by
false and fraudulent pretenses, with intent to defraud the
county, believing that his claim would be paid, he and defend-
ant were both guilty under section 664, although they failed
in their attempt, and they would have been guilty under
section 532 if they had succeeded. In this latter case each of
them would clearly come within the statute as a "person who
knowingly . . . by false . . . representations or pretenses,
defrauds any other person of money or property, . . . and
by thus imposing upon any person obtains credit, and thereby
fraudulently gets into possession of money or property." By
attempting to violate section 532, defendant brought himself
within section 664. The supervisors were deceived, as is
evidenced by the fact that they allowed the claim and ordered
a warrant drawn for it. That the ordinance was found to be
illegal, in time to prevent the consummation of the crime
intended, is immaterial, since there was, in fact, another crime
committed. Defendant might be convicted of the lesser of-
fense. (*People* v. *Defoor*, 100 Cal. 153; Pen. Code, sec. 1159.)

In *Commonwealth* v. *O'Brien*, 172 Mass. 248, defendant
agreed to convey to one Kearns certain shares in a corporation
for two thousand dollars. The indictment charged that
defendant falsely represented that he owned the shares. The
court said: "The next objection is, that the agreement set
forth contained an illegal understanding to vote with Kearns
to employ Kearns as agent of the company, and that this takes
away the criminal character of the fraud, as the money was
parted with for an unlawful purpose. If we assume that the
promise was not merely not enforceable, but illegal, . . . the
question remains whether the conclusion follows. As is
pointed out by Peckham, J., in his dissent (*McCord* v. *People*,

46 N. Y. 470), the criminal law has a public end in view,—
namely, to deter people from swindling. With the greatest
respect for the New York and Wisconsin courts, (referring
to *State* v. *Crowley,* 41 Wis. 271,[1]) we think this end is more
effectually reached if we do not read into the absolute words
of the statute an implied exception which allows a knave to
cheat any one out of his money, if the knave can succeed in
persuading his victim into a scheme which has any technical
elements of illegality on the victim's side.. The question of
allowing the latter a personal remedy is essentially different.''
(*People* v. *Martin,* 102 Cal. 558.)

Appellant contends, as his position logically compels him to
do, that had he succeeded in collecting the money, the case
would not have been within the statute, and yet it must be
conceded that every element of the crime would in that case be
present. Buller, J., said in *Young* v. *Rex,* 3 Term. Rep. 98;
''The ingredients of this offense are the obtaining money by
false pretenses and with intent to defraud. . . . If the intent
be made out, and the false pretense used in order to effect
it, it brings the case within the statute.'' Mr. Wharton says:
''The rule may be broadly stated, that any designed misrepre-
sentation of existing conditions, by which a party obtains the
goods of another, is within the statute.'' (2 Wharton on
Criminal Law, 8th ed., sec. 1135.) Defendant would have us
read into the plain words of the statute the proviso that the
person defrauded shall have a legal right to part with the
money or property obtained by the alleged false pretenses.
We agree with the Massachusetts court that the statute should
not be thus shorn of one of its salutary objects.

Appellant quotes as follows: ''It is the obtaining of the
money or property that is the perpetration of the fraud, not
the making of the false pretenses, that constitutes the crime.''
(Citing McClain on Criminal Law, sec. 680; *Commonwealth*
v. *Van Tuyl,* 1 Met. (Ky.) 1.[2]) This cannot be unqualifiedly
true, for men obtain money every day without committing
crime. The essence of the crime lies in obtaining the money
or property by false pretenses, with intent to defraud, and
hence it is. that the fact of the illegality of the ordinance is
immaterial, since it was the false pretense used with intent to

---

[1] 22 Am. Rep. 719.                    [2] 71 Am. Dec. 455.

defraud the county, and not any imperfection in the ordinance that constituted the crime.

2. The correctness of several of the instructions is challenged, but as defendant comments upon but two of these in his brief, it will be assumed that the other objections are waived. In the course of an instruction correctly defining the two classes of evidence,—to wit, direct and circumstantial, —the court said: "There is nothing in the nature of circumstantial evidence that renders it any less reliable than the other class of evidence. A man may as well swear falsely to an absolute knowledge of the facts, as to a number of facts, from which, if true, the facts on which guilt or innocence depends most [must] inevitably follow." It is claimed that this part of the instruction invades the province of the jury. In was held in *People* v. *Wilder*, 134 Cal. 182, that a similar instruction was not prejudicial error. The court instructed the jury as follows: "The jury are further instructed, that while testimony of an accomplice in reference to the crime with which the defendant is charged is admissible in evidence, and the degree of credit to be given his evidence is a matter exclusively for the jury to determine, the testimony of such accomplice alone and without corroboration is not sufficient to warrant a conviction; but if such testimony, as to matters material to the issue, is corroborated by any other witness, is by the facts and circumstances proved by the prosecution in the manner required by section 1111 of the Penal Code of this state, which evidence satisfies the jury of the guilt of the defendant beyond a reasonable doubt, the jury are warranted in returning a verdict of guilty as charged in the information."

It is claimed that this instruction does not correctly state the law as laid down in sections 1110 and 1111 of the Penal Code. Elsewhere the court gave instructions embodying the provisions of these sections, so far as material. We can discover no conflict between the instruction complained of and either of said sections; nor can we perceive any omission of any material portions of said sections in the instructions as given. The court stated substantially that the evidence must tend to connect the defendant with the commission of the offense.

3. It is objected that the court admitted the testimony of witnesses as to conversations had between the defendant and his accomplice, Clarkson, and one Bock, after the claim for bounty, which is the basis of this action, had been filed with the board, which conversations related to filing more squirrel-tails with the board at some future time; also, that the court erred in admitting in evidence a sack containing tails, which sack and tails were found on the premises of Clarkson after the commission of the offense charged. It is contended that these matters were no part of the *res gestæ,* and tended to prove matters having no connection with the offense charged. (Citing *People* v. *Dilwood,* 94 Cal. 89; *People* v. *Stanley,* 47 Cal. 113.[1])

It appeared that defendant brought with him from Oakland to Visalia a trunk, which he told Clarkson contained twelve thousand squirrel-tails. To avoid suspicion, defendant proposed that Clarkson should claim for part, and that he should find some other person or persons to file claims for the balance. To this end, one Doke was first spoken to, and agreed to enter into the scheme. Clarkson claimed for 4,889, and Doke for 2,700. The balance were taken to Clarkson's house, and a few days later one Bock was brought into the scheme, and was to make claim for the remaining tails. These latter squirrel-tails were seized, after Clarkson had filed his claim, and upon information given by him to the county officers. The sack in which they were found was identified as having been brought there by defendant with the squirrel-tails in it and as part of the original twelve thousand. The testimony objected to related to conversations between defendant and Clarkson and Bock, shortly after Clarkson had filed his claim. The principal facts to which objection was made were previously stated by the witness without objection. (*Livermore* v. *Stine,* 43 Cal. 274; *People* v. *Dollor,* 89 Cal. 513.)

The judgment and order should be affirmed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Harrison, J., Garoutte, J., Van Dyke, J.

[1] 17 Am. Rep. 401.