Appeal from Fourth District.

## STATE v. SEYMOUR.

No. 2946.   Decided February 28, 1917.   (163 Pac. 789.)

1. FALSE PRETENSES—INFORMATION—SUFFICIENCY.   Under Comp. Laws 1907, Section 4397, penalizing persons obtaining money by false pretenses, etc., an information alleging that stock subscriptions were obtained by falsely representing the corporation's condition, etc., is sufficient, although the stock was delivered and its value may have been as represented. (Page 287.)

2. FALSE PRETENSES—INFORMATION—SUFFICIENCY.   Under Comp. Laws 1907, Section 4397, providing different punishments where the value of property obtained by false pretenses is under or over $50, an information, not alleging the value of a $250 promissory note obtained by accused, is insufficient. (Page 288.)

3. INDICTMENT AND INFORMATION—VERDICT—CURING DEFECTIVE INFORMATION.   Under Comp. Laws 1907, Section 4397, prescribing different punishments where value of property obtained by false pretenses is under or over $50, a verdict, finding accused guilty as charged in the information, does not cure the information's failure to allege the value of the property secured.[1]   (Page 288.)

4. CRIMINAL LAW—ADMISSIBILITY OF EVIDENCE—OTHER TRANSACTIONS.   In a prosecution for obtaining property by false pretenses, evidence that accused made similar representations to other parties about the same time is admissible.[2]   (Page 291.)

5. CRIMINAL LAW—ADMISSIBILITY OF EVIDENCE—LETTERS WRITTEN BY THIRD PERSONS.   Where accused was charged with falsely pretending his stock subscription project was indorsed by certain church officials, letters written by such officials, indorsing the project are incompetent. (Page 292.)

6. FALSE PRETENSES—INSTRUCTIONS—MATERIALITY OF MISREPRESENTATIONS.   In a prosecution for false pretenses, an instruction that accused was guilty if one or all of certain misrepresentations was false is erroneous, because allowing conviction for an immaterial false misrepresentation.   (Page 292.)

7. CRIMINAL LAW—INSTRUCTIONS—ASSUMING FACTS.   In a prosecution for false pretenses, an instruction, assuming accused stated a factory for which he was selling stock was nearly constructed, is erroneous for assuming such fact.   (Page 293.)

[1]*State* v. *Jukanovich*, 45 Utah 372, 146 Pac. 289.
[2]*Trout & Resort Co.* v. *Lewis*, 41 Utah 183, 125 Pac. 687.

Appeal from District Court, Fourth District; *Hon. A. B: Morgan,* Judge.

C. D. Seymour was convicted for obtaining a promissory note by false pretenses, and appeals.

REVERSED AND REMANDED.

*J. W. Robinson* for appellant.

*Dan B. Shields, Atty. Gen., O. C. Dalby* and *Jas. H. Wolfe, Asst. Atty. Gen.,* for the State.

FRICK, C. J.

The defendant was convicted of the crime of obtaining a certain promissory note from one C. G. Johnson, by false pretenses. He appeals from the judgment of conviction.

In view that the sufficiency of the information was assailed by general demurrer, which is insisted on in this court, and for the reasons hereinafter appearing, we give the facts charged as constituting the offense in full. They are:

"The said C. D. Seymour on the 16th day of March, A. D. 1915, at the county of Utah, in the state of Utah, did then and there with intent to cheat and defraud C. G. Johnson of his personal property, knowingly, designedly, falsely, feloniously, and fraudulently represent and pretend to the said C. G. Johnson, that there was a corporation by the name of Utah Glass Company, which was duly organized with a board of directors, and that he was selling preferred treasury stock of the said corporation; that the par value of said stock was $20 per share, as fixed by the articles of incorporation, of said company; that the money and other property derived from the sale of said stock would go into the treasury of the said Utah Glass Company, for the purpose of completing its glass factory, which he then and there stated was in the course of construction and the same was near its completion. He further stated and represented that the material necessary to complete the said glass factory was on the ground, and that the machinery for its operation was ready to be installed. The defendant then and there further stated and represented

to the said C. G. Johnson that said factory would be completed within 90 days from that time, and that the stock then and there offered would pay a dividend for the year 1915 of 12 per cent. per annum; that said stock so offered was preferred stock; that the same would draw a dividend in preference to other stock issued by said corporation. That in connection with the aforesaid statements and declarations, the defendant produced a letter which he read to the said C. G. Johnson, and which letter the said C. D. Seymour claimed and represented was written and signed by O. P. Miller, of the presiding bishopric of the Church of Jesus Christ of Latter-day Saints, a man in whom the said C. G. Johnson had great confidence, and which said letter strongly urged the members of said church, of which C. G. Johnson is one, to buy said stock, and the defendant then and there stated to said C. G. Johnson, in connection with said letter, that the said O. P. Miller had authorized him to make a canvass and sell what stock he could to the members of said church, and that said church would take over the majority of the stock and provide such money as would be necessary to put said glass factory in operation. By means of which said false and fraudulent representations and pretenses, and the said C. G. Johnson relying upon and believing said statements and representations to be true, he, the said C. D. Seymour, did then and there, knowingly and designedly, obtain from the said C. G. Johnson, of the money and other valuable things of the said C. G. Johnson, one certain promissory note, in payment for a certain amount of said Utah Glass Company stock, for the sum of $250, drawn in favor of the said C. D. Seymour, with intent then and there to cheat and defraud the said C. G. Johnson, of the same.''

It is strenuously insisted by appellant's counsel that the information is insufficient for the reason that it appears therefrom that said C. G. Johnson obtained the identical corporate stock that he bargained for, and for which he made and delivered the promissory note in question.
It is contended, therefore, that inasmuch as Johnson obtained the things he bargained for, and there being no allegation in the information that the stock was not worth the amount

Johnson had agreed to pay therefor, for that reason it does not appear that Johnson was defrauded to any extent or in any amount whatever, and that for aught that is made to appear Johnson may have been benefited by the transaction since the stock may have been of greater value than the amount he paid therefor. It is only necessary to state that counsel is in error in his assumption that Mr. Johnson obtained what he bargained for. True, he obtained a certificate for the fifty shares of stock for which he gave his note; but what he bargained for was fifty shares of a particular kind or character of stock, and which was issued by a corporation which possessed the property and assets and was in the condition represented by the appellant. If the representations set forth in the information were false, and it is alleged they were so, then Johnson manifestly did not obtain what he bargained for, and if he was induced to execute and deliver the promissory note in reliance upon the representations of the appellant which were false, then no other inference is permissible than that the appellant made the false representations with the intent to defraud Mr. Johnson, and that Mr. Johnson was in fact defrauded. The information is therefore not vulnerable to the objection just discussed.

Our statute is practically a copy of the California statute upon the same subject, and the Supreme Court of that state, in the case of *People* v. *Bryant*, 119 Cal. 595, 51 Pac. 960, held an indictment under the California statute sufficient although it did not contain the allegations contended for by counsel. To the same effect are the following cases: *State* v. *Merry*, 20 N. D. 337, 127 N. W. 83; *People* v. *Howard*, 135 Cal. 266, 67 Pac. 148; *Commonwealth* v. *Ferguson*, 135 Ky. 32, 12 S. W. 967, 24 L. R. A. (N. S.) 1101, 21 Ann. Cas. 434; *Commonwealth* v. *Coe*, 115 Mass. 491. Indeed, the great weight of authority, under statutes like ours, is against counsel's contention.

The general demurrer to the information, however, raises another question which presents more difficulty.  **2, 3** The information is based on Comp. Laws 1907, section 4397, which reads as follows:

"Every person who knowingly and designedly, by false

.or fraudulent representations or pretenses, shall obtain from any other person any chose in action, money, goods, wares, chattels, effects, or other valuable things, with intent to cheat or defraud any person of the same, if the value of the property so obtained does not exceed $50, is punishable as in cases of petit larceny, and when the property so obtained is of the value of more than $50, the persons so offending shall be punishable as in cases of grand larceny.''

It will be observed that although the value of the property or thing that is obtained by alleged false pretenses is an element of the offense, that is, determines the gravity or degree of the offense as in larceny, yet the value of the promissory note which was obtained from Johnson is not alleged in the information. True, it is alleged that appellant obtained ''one promissory note, in payment for a certain amount of said Utah Glass Company stock, for the sum of ($250.00) two hundred and fifty dollars, drawn in favor of the said C. D. Seymour,'' etc. This, however, is only a part of the description of the promissory note that was so obtained. The same allegations could truthfully have been made in case $225 had actually been paid and indorsed on the back of the note, and which would have reduced the amount due thereon to an amount less than would be the presumed value of the note under Comp. Laws 1907, section 4363, and to an amount less than $50, and thus the offense charged would not have constituted a felony under section 4397, supra; nor, in the absence of an allegation of value, would the complaint charge any offense.

If it were assumed, however, that it might be sufficient to support a judgment of conviction if the value of the property that is alleged to have been obtained by false pretenses were found by the jury in their verdict, yet, by referring to the verdict of the jury in this case, it will be seen that they merely found ''the defendant, C. D. Seymour, guilty of obtaining personal property by false pretenses as charged in the information.'' In *State* v. *Jukanovich*, 45 Utah 372, 146 Pac. 289, we said:

"We think the rule is elementary that the verdict must, either in itself or by reference to the information or indictment, contain all

the elements constituting the crime of which the accused is found guilty."

In 19 Cyc. 447, in referring to what is essential to sustain a conviction for obtaining property by false pretenses, it is said:

"The verdict must contain, either in itself or by reference to the indictment, all the elements of the crime."

Such is the holding in *People* v. *Bryant, supra,* and in *People* v. *Cummings,* 117 Cal. 499, 49 Pac. 577. Now, if the promissory note in question in the information had been alleged to be of some specific value which was in excess of fifty dollars, and the jury would have found the appellant guilty "as charged in the information," then by having recourse to both the information and the verdict, all the elements constituting the crime of which appellant stands convicted would appear, and the court's judgment would then be supported by the information and the verdict  As the matter now stands, however, there is neither an allegation in the information nor a finding by the jury upon which a judgment may legally be based that the appellant is guilty of a felony; nor, in the absence of an allegation of value does the complaint state any offense. To find that the appellant is "guilty as charged in the information," standing alone, is not sufficient where no value is alleged.

The writer has examined many approved forms of informations and indictments, and in no instance has he found an information or indictment that did not charge the value of the property that it was alleged was obtained by false pretenses. For forms of informations and indictments for obtaining property or money by false pretenses see 8 Ency. Forms, pp. 538 to 566, where approved forms from many of the states are given. In charging larceny the value of the property stolen is always alleged in the information, and is likewise always found by the jury in their verdict. Now, since the crime of obtaining property by false pretenses, for the purpose of punishment, is divided into degrees the same as larceny, we can see no escape from the conclusion that the same rule which obtains in larceny respecting the allegation

of the value of the property and the finding by the jury of
such value should also control in cases where the property is
alleged to have been obtained by false pretenses.    We are
of the opinion, therefore, that the information is defective
in the particular just pointed out.

It also is contended that the court erred in not directing
a verdict for the defendant, for the reason that the evidence
is insufficient to justify a finding that the defendant intended
to defraud Mr. Johnson, or any one else, and that the evidence
is also insufficient to authorize a finding that the defendant
did obtain the note by false pretenses.    In view that the case
must be remanded for a new trial, we shall refrain from dis-
cussing or reviewing the evidence.    It must suffice to say,
therefore, that if the jury believed the evidence produced by
the state and disbelieved the evidence produced by the appel-
lant, as they had a right to do, then there is sufficient evi-
dence in the record as it now stands to support the findings
of the jury.    This assignment must therefore fail.

It is further contended that the court erred in admitting
in evidence what counsel denominates ''separate and
distinct crimes.''    What the court really permitted        4
the state to prove is this: Either a few days before or a
day or two after the transaction between appellant and Mr.
Johnson some of the witnesses for the state testified that ap-
pellant had attempted to sell, or did sell, some of them some
of the corporate stock, fifty shares of which he had sold to
Mr. Johnson, and that at such time, and as a part of such
transactions, or attempted transactions, the appellant made
representations to them similar to those testified to by Mr.
Johnson and some of the other witnesses who were present and
heard the representations which appellant is said to have
made to Mr. Johnson.    The court charged the jury that the
statements attributed to appellant, which it is alleged he had
made to others, were ''admitted by the court for the sole
purpose of assisting you in determining the intent of the
defendant and his good faith or honesty of purpose in any
transaction he had with said C. G. Johnson, and you should
consider it for that purpose and that purpose alone. * * *''

We had occasion to consider the question now under con-

sideration in the case of *Trout & Resort Co.* v. *Lewis*, 41 Utah 183, 125 Pac. 687. While that was a civil case involving false representations, yet the rule respecting the admission of other similar false representations, where the intent is material, is the same in criminal as in civil cases. In that case we think the rule is correctly stated, and, according to the rule there announced, the court committed no error in admitting the evidence complained of. To the same effect is 19 Cyc. 443, where it is said:

"Evidence of similar false pretenses made by defendant to the same person for the purpose of obtaining property, or to others shortly before or after the representations for which defendant is on trial, is, in most jurisdictions, held admissible to prove either defendant's knowledge of their falsity or a guilty intent, or both. * * *"

See, also 5 Ency. of Ev. 747.

It is next insisted that the court erred in excluding certain letters offered by the appellant. The letters offered purported to have been written by a certain church official of the Church of Jesus Christ of Latter-day Saints, and, as appellant contends, were to the effect that the church supported the proposed enterprise of building the glass factory referred to. Appellant offered the letters in question in evidence to show, as he contends, that he acted in good faith in representing that the church "stood behind the enterprise." No doubt the appellant had the right to prove by any competent evidence that the church, or the officials of the church, or some of them, "stood behind the enterprise," as he puts it, but we cannot conceive how the proffered letters were competent evidence to establish that or any other material fact. Those letters had no connection whatever with the transaction in question, and were of no more legal efficacy than the declarations of any third person would have been. The court committed no error in excluding the proffered letters.

It is further contended that the court erred in charging the jury. The court, in its charge, had copied the information in full. Then, in a separate charge, the court again copied into the charge all of the represen-

tations and statements contained in the information and charged the jury that if the jury found beyond a reasonable doubt that "either one or all of said representations" were false, they should find the defendant guilty. The court further charged that if the jury found "that the money and other property derived from the sale of said stock would go into the treasury of the Utah Glass Company, for the purpose of completing its glass factory, *which he then and there stated was in the course of construction and the same was near its completion;* * * *." (Italics ours.) The charge was excepted to, and the giving of it is now assigned as error. Quite apart from the fact that at least one, and possibly two, of the representations set forth in the information did not relate to an existing fact, or to existing facts, the charge is faulty. It may well be that in case there are several or a series of material independent representations which are false, the court would be justified in charging the jury that if they found either one or more, or all, of the representations false, they could convict. In order to do that, however, the court should be careful to charge the jury that such false representation, where only one is deemed sufficient, must be a material one, and that it, standing alone, must have "had a material influence in inducing the owner to part with his property." 19 Cyc. 407. Otherwise the defendant might be convicted upon an immaterial representation or on one which had no effect upon the mind of the person who parted with his property or money.

The charge is, however, faulty for another reason. The court, in that portion of the charge we have copied above, assumed a very material fact to exist as appears from the words we have italicized.

The same vice, while not so pronounced, is also found in other portions of the charge, to which it will, however, not be necessary to refer, for the reason that the error will not occur again.

Courts, in charging jurors, should be very careful not to assume any material fact or facts. Jurors, who are laymen, are always eager to follow the opinion or judgment of the court, and if the court assumes any material fact in the charge,

the jurors are most likely to follow the assumptions of the court. Indeed, we must assume that such is the case unless the record clearly shows the contrary.

It may also be the case that, although the court has erred in the particular now under consideration, yet the record may disclose that no prejudice resulted. Such is, however, not the case here. In this case the jury, upon the whole evidence, could well have found the defendant not guilty. The errors in the charge pointed out were therefore very prejudicial.

We remark that this is a case where a conviction is had for obtaining property by false pretenses, which was obtained as the purchase price for the capital stock of a corporation. In view that disappointment frequently, if not usually, follows the purchase of the capital stock of corporations whose business is not yet established for the reason that the returns of the contemplated enterprise may fall far below the expectations of the promoters, regardless of their honesty of purpose or integrity, or that the enterprise may entirely fail, courts, in charging the jury, should be very careful to have them understand that the representations alleged to be false, and which are relied on by the prosecution, must be found beyond a reasonable doubt to have been material; must have been made with bad motives and with the intent to obtain money or property fraudulently, and must have induced the complaining witness to part with his property.

Where an enterprise fails or is only quite unsuccessful, charges of misrepresentation and fraud are easily made and sometimes quite as easily proved, and may be hard to explain away. Such transactions, therefore, should be carefully scrutinized by the courts before one so charged is sent to the penitentiary for a term of years, and, as in this case, is fined four times the face value of the note which it is alleged was obtained by false pretense.

Finally, it is contended that the district attorney was guilty of misconduct during the trial, and in his closing argument to the jury which was prejudicial to appellant's rights. We have carefully read those portions of the argument of the district attorney that are complained of and his conduct

during the trial which is assailed. While we shall not prolong this opinion by setting forth the district attorney's argument, nor what he said during the trial, all of which is complained of, yet we have no hesitancy whatever in stating that the argument and conduct of the district attorney that are complained of here transcended the rules of propriety, and that, in view of all the facts and circumstances of this case, the same, in our judgment, were prejudicial to the rights of the appellant. Nor was the vise in this case cured by the charge of the court. It was made to appear from the evidence that the district attorney represented Mr. Johnson as attorney in a civil action pending, in which the transactions here involved were also involved. In view of that fact the district attorney may have been more zealous than he otherwise would have been. While much latitude must necessarily be allowed attorneys in presenting and arguing cases in court, and while much may be attributed to the zeal of counsel, yet courts cannot shut their eyes to misconduct which must necessarily have prejudiced the adversary, and especially when the adversary is on trial for his liberty. While it is contended that the remarks of the district attorney were provoked by appellant's counsel, we can find nothing in the record to justify the contention or to justify the conduct of the district attorney.

For the reasons stated, the judgment is reversed, and the cause is remanded to the district court of Utah county, with directions to grant a new trial, and to give the state leave to amend the information in the particular stated as provided by Comp. Laws 1907, section 4694, as amended by chapter 42, Laws 1913, p. 54, and to proceed with the case in accordance with the views herein expressed.

McCARTY and CORFMAN, J. J., concur.