[Crim. No. 401.    Third Appellate District.—November 21, 1917.]

## THE PEOPLE, Appellant, v. CHARLES H. BUTLER et al., Respondents.

CRIMINAL LAW—PRESENTATION OF FRAUDULENT CLAIM AGAINST COUNTY —INDICTMENT—CHARGING IN WORDS OF STATUTE INSUFFICIENT.—An indictment under section 72 of the Penal Code for presenting a false and fraudulent claim against a county is not sufficient where the offense is merely alleged in the language of the statute, since the circumstances of the offense must be set out.

ID.—FALSITY OF CLAIM—KNOWLEDGE OF DEFENDANT.—An indictment charging the presentation of a fraudulent claim to a county board

of supervisors is not sufficient where it is merely alleged that the claim was fraudulent, since it must be shown that defendant had knowledge of its falsity.

ID.—FALSE CLAIM FOR WORK ON PUBLIC HIGHWAY—AUTHORITY TO DO WORK.—An indictment for presenting a false and fraudulent claim to a county board of supervisors for work done on a public highway is insufficient, in the absence of any allegation that the defendant was acting under the authority of a person authorized to incur a claim against the county.

ID.—INCLUSION OF FALSE CLAIM OF THIRD PARTY—INDICTMENT WHOLLY VOID.—An indictment for presenting a false claim for road work which contains two items, one for work done by defendant and the other for work done by a third party, each for more work than was done, is void as to both claimants.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Appellant.

J. R. Leppo, for Respondents.

CHIPMAN, P. J.—Defendants were jointly indicted by the grand jury of Sonoma County for the violation of section 72 of the Penal Code. There are four separate counts in the indictment and the charging matter or body of the indictment is substantially identical in each count, excepting the amounts therein named. The charging part of the indictment, as set forth in the first count, is as follows:

"That the said Charles H. Butler and C. L. Patteson on or about the 4th day of May, 1916, and in the said County of Sonoma, State of California, did wilfully and unlawfully and feloniously, with intent to defraud, and with the intent to defraud Sonoma County, present for allowance and payment to the Board of Supervisors of Sonoma County who were then and there duly authorized to allow and pay the same if genuine, a false and fraudulent claim, bill, account, voucher and writing, and which said claim was in writing and was a demand of Charles H. Butler on the treasury of the County of Sonoma, State of California, for the sum of $124.50 for road work performed on the public roads in Mendocino road

district in said Sonoma County during the month of April, 1916, and which said demand purported to be for road work upon the public roads in said road district performed at the request and pursuant to the direction therefor by Charles H. Butler who was then and there and at all times herein mentioned, the road master of said road district and the employee, agent and servant of said C. L. Patteson as Supervisor and said Patteson was then and there and at all times herein mentioned the duly elected, qualified and acting supervisor of the Fourth Supervisorial District of Sonoma County in which said road district was and is located. That said claim and demand was itemized and gave names, dates, and services rendered, and character of work done, number of days engaged, and price per day of the services of each man employed in the performance of said road work for which said demand and bill was presented, and that said claim was duly verified to be correct by the affidavit of Charles H. Butler, and annexed thereto in writing, in and by which said oath, said Charles H. Butler, after being first duly sworn, deposed and said that the work mentioned in said claim was of the nature and was performed by the persons and at the time specified therein in each case and no part thereof had been paid and that said labor was performed under his direction as timekeeper and that the report thereof covered all work performed under his direction for the time covered by the said claim and that each of the claims within said demand and claim was presented within one year after the last item thereof accrued, and which said oath was on the 4th day of May, 1916, duly subscribed and taken before the said C. L. Patteson, as such Supervisor, who then and there attached his name thereto as said Supervisor together with a statement that the said oath was subscribed and sworn to before him, the said C. L. Patteson the 4th day of May, 1914.

"That in truth and in fact said claim which was then and there so presented to said Board of Supervisors was false and fraudulent in this, that it contained an item for nine days' labor by said Charles H. Butler with a team and wagon at the rate of $4.50 per day, at the price of $2.50 a day for the labor of said Charles H. Butler and at the price of $2.00 a day for his team and wagon when in truth and in fact said team and wagon were not, during the said month of April, employed in road work and did not, during said time, per-

form any road work in said district as set forth in said claim or at all, and the charge of $2.00 a day for nine days for said team amounting to $18.00, and being a part of the total sum of $124.50 for which said claim was presented, was false and fraudulent; and that said demand and claim also contained an item for six days' labor by L. Kelley and a wagon at the rate of $4.00 per day amounting to $24.00, and which said item was false and fraudulent in this that in fact said L. Kelley was so employed by himself and team and wagon for four days only during the month of April, 1916, and that the said charge on account of the services of L. Kelley was for two days in excess of the amount of labor so performed by him and for the sum of $8.00 in excess of the amount due on account of labor and services performed by said L. Kelley.

"That said claim so made out was filed with the clerk of the Board of Supervisors three days prior to the time of the meeting of said Board of Supervisors, at which said Board of Supervisors was asked to allow the said claim and the said claim was allowed by the said Board of Supervisors on the 9th day of May, 1916, at a regular meeting of said Board, and ordered to be paid out of the road fund of the said Mendocino road district, and all work for which said demand and claim purported to be presented, purported to have been performed under the direction and supervision of the said Charles H. Butler, who was then and there the timekeeper and road master of said road district. That said L. Kelley before the presentation and filing of said claim as aforesaid by an instrument in writing, duly transferred, and assigned, and delivered to said Charles H. Butler his claim against Sonoma County for all services performed in Mendocino road district by him between the first day of April, 1916, and the first day of May, 1916, and appointed said Charles H. Butler as his attorney in fact, to present his claim and to collect and receipt for the same. Contrary to the form, etc."

Section 72 of the Penal Code is as follows: "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, town, city, ward, or village board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is guilty of felony."

The defendants interposed a demurrer to each count of the indictment on various grounds, general and specific, and on

which it was alleged in the demurrer that the indictment does not specifically conform to the requirements of sections 950, 951, 952, and 954 of the Penal Code, or to either of said sections; that the facts stated in said indictment do not constitute a public offense; that neither of said counts contains a statement of the acts constituting the alleged offense in ordinary and concise language or in such manner as to enable a person of common understanding to know what is intended thereby; nor is either of said counts direct or certain in its terms regarding the offense; nor is either of said counts certain or direct "as regards the particular circumstances of the offense." The demurrer also sets forth a number of matters alleged to be essential to a good indictment which are not stated or alleged in any of said counts. The demurrer also sets forth a number of matters and things as to which each count of the indictment is uncertain.

After argument and submission of the demurrer, the court made the following order: "It is the order of the court that the demurrer be sustained to each and every count of the indictment. The court directs the case to be submitted to the present grand jury. This matter has been a long, drawn-out affair, brought about by events over which no one had control. The court suggests that the grand jury be convened at once and this matter presented to them in order that it may be determined."

The district attorney took exception to the ruling of the court sustaining the demurrer "and the ruling made by the court in connection therewith" and gave notice of appeal therefrom. By request of the district attorney and order of the court, the phonographic reporter transcribed, among other documents, those portions of the notes taken of the oral opinion pronounced by the court "embodying the decision and opinion of said court sustaining the demurrer of defendants to the indictment." As we find ourselves in agreement with the learned trial judge, we take the liberty of quoting certain parts of his opinion:

"The claim has been made that the indictment does not state a criminal offense. That is one matter that attracted my attention upon the first reading of the indictment, and that has been with the court a very grave question for consideration. Whatever ruling the court makes upon this indictment is not made upon technical grounds. It is based on

what I understand to be broad and substantial grounds, as defined by the courts of California and of all of the states of the Union.

"It is established beyond controversy, in the case of *People* against *Mahony,* 145 Cal. 104, [78 Pac. 354], that in an attempt to charge an offense under section 72 of the Penal Code of this state, it is not sufficient that you allege it in the language of the statute. Being in line with all cases in which fraud and deceit is involved, there must be a statement of the facts, and from such statement of facts an inference or a conclusion must be reached which is, of course, a question of law. In the case of *People* v. *Carolan,* 71 Cal. 195, [12 Pac. 52], our supreme court held it was sufficient to charge the offense in the language of the statute. In the later Mahony case, Justice Angellotti, writing the opinion, held that it was not sufficient to charge in the language of the statute, but that the circumstances of the offense must be set out. That, of course, has been the law ever since and it is the law to-day.

"The particular matter that suggested itself to the court as possibly being sufficient is this: 'That the said Charles H. Butler and C. L. Patteson, on or about the fourth day of May, 1916, and in the said county of Sonoma, state of California, did willfully and unlawfully and feloniously, with intent to defraud, and with the intent to defraud Sonoma County'—to stop there would be pleading the offense in the language of the statute, but the pleader goes on and undertakes to set up the particular acts which constitute the crime. In the transaction is brought a man by the name of Kelley and who, I presume or assume, was acting under authority of Mr. Patteson, the supervisor, although that is not positively alleged, that he was acting under authority and by direction of either Butler or Patteson, as supervisors. There is no allegation that Patteson or Butler knew the claims presented to the board of supervisors were false and fraudulent. That, in my judgment, is absolutely essential. I have taken notice of all of the indictments of all the states that I have examined where the language is very much like ours. In some states the statute includes the word 'knowingly.' In our statute the word 'knowingly' is not set out. In this indictment it is simply alleged that Patteson and Butler both presented a claim to the board of supervisors, which claim was fraudulent. That would not be an offense. They must

have the knowledge of the fraudulency of the claim or demand. That is elementary, and that is the matter that has been uppermost in my mind since I first heard this indictment read about two weeks ago. I think that is fatal. I am satisfied it is fatal.

"The next defect in the indictment is that this work was done on the public highway. Of course, it would not be any crime for a man to do work on the public highway in front of his house 'and present a claim to the board of supervisors and ask for the payment of that claim. The decisions have repeatedly held, and the statute itself is sufficient on the subject, that the claim must be such a claim as, if genuine, would be authorized to be paid under the law and be such a claim as the board of supervisors could pay. In other words, if I were to present a claim for bounty on squirrels, and there is no ordinance of the board of supervisors authorizing the payment of such bounty, that would not be a criminal offense under the statute. Some of these questions have been passed on so often that it is hardly necessary to enumerate them, but I do so in going through this matter briefly if not as thoroughly as I would like to.

"There should be an allegation in the indictment that Butler and Kelley, who also, it would seem, did work upon the highway, were acting under the authority of Patteson, who is the supervisor, and were authorized to incur a claim against the county. In my judgment, those two points are unanswerable and controlling in this case.

"In reference to section 72 of the Penal Code, there have been but three cases that have gone to the supreme court of our state. One is *People* against *Carolan,* in the 71st California. The next is *People* against *Mahony,* in the 145th California; and the next is *People* against *Lantorman,* 9th California Appellate, 675, [100 Pac. 720]. Dr. Lantorman was the coroner of the county of Los Angeles. That case was reversed after conviction. It was reversed on the ground of failure to state an offense. It was permissible under the law of the state for the coroner to collect his necessary traveling expenses when traveling without the county. He filed his claim for $8.40, which, I infer from the decision, was perhaps morally an illegal claim and should have been disallowed. Whatever that particular fact may be, it is not important here. This was the point: he filed, as a private citizen, a claim

for necessary traveling expenses without the county. He did not state, nor was it shown in the indictment, that he was the coroner of Los Angeles County. Justice Shaw, writing the decision for the second appellate district, held that that was a necessary allegation, and the board of supervisors could not legally pay the claim unless it was presented in the name of Dr. Lantorman as coroner of Los Angeles County, and the case was reversed after conviction.

"In the Mahony case, the court sustained the demurrer to an indictment similar to this, and the people appealed. Justice Angellotti, writing the opinion of the court, affirmed the decision of the lower court and held that the indictment did not conform to the rules, as they conceived them to be, governing questions of fraud. The Carolan decision was reversed, the court simply remarking that it was decided without full consideration."

The court then takes up the question whether, under existing statutes, the indictment was amendable, and reaches the conclusion that it is not and hence ordered the matter resubmitted to the grand jury. The court then resumes the discussion of the subject as follows: "There are other objections made to the indictment. I assume that the indictment was prepared, as many of them are, in haste. There are a number of allegations in the indictment that are stated rather by way of recital which should be positively averred. The clearest language should be selected. It should appear beyond question that an offense has been committed and that the acts upon which the prosecution rely are clearly and positively stated. Otherwise, they amount to nothing more than recitals. I appreciate that it is no easy matter to draw an indictment under section 72 of the Penal Code of this state. It is the most difficult section to comply with that can be found in all the code. There cannot be any doubt about that. It is not so difficult to draw an indictment involving ordinary allegations of fraud, but to meet the objections and the rules and the decisions that we find flying in our faces, under this section it is not an easy undertaking.

"There is a decision in which this section of the code was discussed found in *People* v. *Howard*, 135 Cal. 266, [67 Pac. 148]. Instead of proceeding under section 72, the people there proceeded under the section defining false pretenses, section 532. It was a case of bounty on squirrels killed in

Tulare County. The board of supervisors of Tulare County in the presentation of claims by its ordinance required that the claimant accompany his claim with the squirrels' tails. The defendant in that case, with another, presented a claim of twelve thousand squirrels killed in Alameda County. Before the board paid the claim, the fraud was discovered. The point was made that the ordinance under which the board acted in authorizing the payment of a bounty on squirrels' tails was invalid. The same authorities here cited were invoked by the defendant in the bounty case, and it was insisted that those authorities applied to false pretenses. Justice Chipman distinguished the two, and said no. He said the defendant, if he did present the squirrels' tails, was guilty of the offense with which he was charged. Why? Because it was an attempt to commit a fraud; it did not matter whether the ordinance was valid or not, if a man attempted to get money by a fraudulent transaction. He decided that the section was broad enough to cover the question of fraud, and the judgment was affirmed.

"But when we come to section 72, then a different question arises, as is very evident from a reading of the section: 'Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, town, city, ward, or village board or officer, authorized to allow or pay the same if genuine'—'to pay the same if genuine.' If the squirrel tail man had been arrested and proceeded against under section 72, he would have been acquitted because the ordinance was invalid; the board of supervisors would have been charged with the knowledge of its invalidity, and it would have been held to have been an improper claim in that case. Therefore, he could not have been held under that section. The defendant was properly held under section 532, because he attempted to get money by fraud as defined by section 532 of the Penal Code.

"It will be noted, upon a reading of the indictment, so far as Kelley is concerned, that there is no allegation that Butler, under whom, presumably, he was working, knew that the claim handed to him [Butler] or made out by Kelley was false. For instance, I am working on the road; I go to the roadmaster, as we commonly call him—he is no longer roadmaster, however, but that is immaterial—and say: 'I have worked seven days'; I make affidavit to it, and do whatever

else is necessary to collect the money; he takes it and he says, 'All right,' and he presents it to the county. As a matter of fact, I have only worked two days. He cannot be convicted, of course, without knowledge of such fraud; no one will contend otherwise; he is guilty of no offense unless he knew that I only worked two days. It does not require a citation of authorities to establish such an elementary principle of law. It is but common sense.

"There is an allegation in the indictment that Butler himself put in a false claim, claiming to have worked more days than he actually worked. I think that would be a good allegation against Butler if the Kelley allegation was not there, for this reason: we are confronted with the well-recognized rule that while Butler may be prosecuted for what he did, could you say under such an indictment, in the event of conviction, whether the conviction was had under the claim that he presented and which he knew was false because he presented it, or whether he was convicted for the presentation of the Kelley claim of which he had no knowledge as to its falsity? This rule has been enunciated in this one case I have already cited as the leading case, in the 121 U. S. Supreme Court Reports, written by Justice Miller. That was a case where the Revised Statutes of the United States made it a high misdemeanor for any bank officer to make or cause to be made to the bank officers any false report, and so on and so forth, of its finances and standing, etc. The cashier of that bank made a false report. The very next section of the Revised Statutes required the officer of the bank, or the bank itself, to make a report to the controller of currency. It was made no crime to make a false report to the controller of currency. The indictment charged that the bank cashier made a false report to the officers and to the controller of currency. The court amended the indictment by striking out 'to the controller of currency' and let it stand so far as the bank was concerned. The supreme court of the United States said the lower court could not do it. Of course, the United States procedure is by indictment only. The court said it could not tell which act he was convicted for; he was just as likely to have been convicted for making a false report to the controller of currency, which was not an offense, as for the commission of the actual offense."

In his points and authorities, the attorney-general insists that he is supported by *People* v. *Carolan,* 71 Cal. 196, [12 Pac. 52], in his contention that an indictment charging the offense in the language of the statute is sufficient. In *People* v. *Mahony,* 145 Cal. 108, [78 Pac. 354], the court said: ''The attorney-general, in support of this indictment, relies almost entirely upon the decision of this court in Department, in *People* v. *Carolan,* 71 Cal. 195, [12 Pac. 52]. The question here involved received little consideration in the opinion in that case, being disposed of by the simple statement that the indictment was sufficient, charging the offense, as it did, in the language of section 72 of the Penal Code. No authority was cited in support of this conclusion, and so much of the record of that case as is now accessible indicates that no authorities therein were cited to the court. The conclusion therein reached is so opposed to later decisions rendered by this court in Bank, and also to fundamental principles recognized by the decisions generally, that it cannot be now accepted as authority.''

The point urged by respondents is not that the verdict should charge that the claim was ''knowingly'' presented, but ''that in pleading or charging actionable or criminal fraud, it must appear that the accused knew that the alleged act or misrepresentation was false or fraudulent. This knowledge is always the very gist and essence of the crime charged, unless in those cases where the act or statement was done or made recklessly, and without any knowledge of its truth or falsity.''

As to the necessity to good pleading to allege the facts constituting the fraud, the supreme court in *People* v. *McKenna,* 81 Cal. 158, [22 Pac. 488], had this to say: ''In civil cases the rule is, as stated by Mr. Justice Temple, that the plaintiff is not required 'to allege with minuteness all the particulars and circumstances which constitute the evidence of the alleged fraud, but he must make the charge with sufficient distinctness to enable his adversary to come prepared with his evidence upon the general questions of fraud which will be raised.' . . . The question whether a thing has been done fraudulently is a matter of law, and an allegation of fraud in general terms presents no issuable fact. Where no facts are averred, no facts are admitted.

"It is said by Mr. Bishop that 'to charge simply in the statutory words that the thing was obtained by fraud and pretense is not adequate.' . . .

"Mr. Wharton says an information charging simply that the defendant obtained goods by false pretenses 'would be scouted out of court.'

"As said in *United States* v. *Watkins,* 3 Cranch C. C. 441, [Fed. Cas. No. 16,649] : 'Fraud is an inference of law from certain facts, and the indictment must aver all the facts which constitute the fraud; to aver that an act was fraudulently done is, therefore, to aver a matter of law, and not of fact.'

"It is a sound principle that an indictment charging fraud of any kind should aver with particularity the facts relied upon to show fraud."

Touching the argument of the attorney-general that the indictment sufficiently charges an offense in presenting a false claim, as distinguished from a "false and fraudulent claim," the supreme court in *People* v. *Mahony,* 145 Cal. 104, [78 Pac. 354], said: "It is unnecessary to determine whether the allegation that the claim was 'false' as well as fraudulent adds anything to the indictment. The particular objection that we are considering is not that the indictment does not state facts constituting a public offense, but that it does not conform to the requirements of sections 950, 951, and 952 of the Penal Code, in that it does not sufficiently set forth 'the acts constituting the offense,' and 'the particular circumstances of the offense charged,' so as to enable the defendant to know what was the precise charge against him and to prepare his defense thereto.

"Being advised by the indictment that the people charge that the claim was fraudulent as well as false, even if there be any distinction between these terms as used in connection with a claim such as is set forth in such indictment, he is certainly entitled, upon objection made by demurrer, to know with reasonable certainty the facts relied upon by the people as constituting the alleged fraud."

In reply to the contention of the attorney-general that it was sufficient to charge that the defendant presented the claim "with intent to defraud," since, as is contended, the clause "with intent to defraud" is the equivalent of the omitted necessary allegation that the defendants had knowledge that the claims were false and fraudulent, respondents make

what we regard as sufficient answer to this contention. Says the brief: "There are two answers to this contention. The first is that in order to constitute fraud there must be both an intent to defraud and a knowledge of the false and fraudulent character of the act or statement, and the allegation of one will not supply the other. The second answer is that the supreme court held in the Mahony case, in accordance with the general rule, that the presence of the 'intent to defraud' was not sufficient, and that the facts constituting the false and fraudulent character of the act charged must be alleged. It will be remembered that in the Mahony indictment it was charged that the defendants committed the act with 'intent to defraud,' and yet the indictment was held fatally defective. If the mere allegation that the alleged act was done with 'intent to defraud' was sufficient, it would be equivalent to holding that an indictment in the language of the statute is sufficient; and this our supreme court has declared is not sufficient."

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.