[Crim. No. 4471. Fourth Dist., Div. One. Aug. 19, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
SAMUEL JORDAN et al., Defendants and Respondents.

## COUNSEL

Edwin L. Miller, Jr., District Attorney, and Terry J. Knoepp, Deputy District Attorney, for Plaintiff and Appellant.

Louis S. Katz, Goodwin & Fisher, Luther A. Goodwin and DeAnne E. Fisher for Defendants and Respondents.

## OPINION

**BROWN (Gerald), P. J.**—The People appeal an order entered November 10, 1970, dismissing its action against Samuel Jordan and Fania Jordan under Penal Code section 1008 after the defendants' demurrer to an 18-count indictment had been sustained on June 22, 1970, and the People stood on the indictment rather than take advantage of an opportunity to amend it.

### FACTS BEFORE THE GRAND JURY

On November 17, 1969, between 11 and 11:30 p.m., San Diego Deputy Sheriffs Moorhead and Palmer saw Fania Jordan hitchhiking on Highway 101 near 27th Street in Del Mar. She was nicely dressed, but had no purse or shoes although she wore nylon stockings.

Palmer approached and greeted Fania asking what was going on. Fania said she was hitchhiking to a friend's house in Cardiff. She appeared angry, upset and hostile. Moorhead approached and asked if Fania's car had broken down. She said she was going to Cardiff, did not want to talk to the deputies and then started walking away.

The deputies asked Fania for identification. Initially she refused, but after asking for, and being given, the deputies' identification, she said she was Fania Davis. She again said she did not want to talk to the deputies but Moorhead asked she explain what was going on. Fania said she was a student at the University of California at San Diego and lived in Del Mar.

At this time Samuel Jordan walked up between the deputies, grabbed

Fania by the arm, jerked her toward him and said "Don't you ever do that again." He appeared angry and upset. Samuel proceeded southbound on Highway 101 with Fania at a rapid walk.

Moorhead called to Samuel to stop but was ignored. The deputies caught up with Samuel and Fania and Moorhead asked Samuel for identification and an explanation. Samuel refused, commenting if he and Fania were white, the deputies would not be doing this.

Moorhead feared Samuel might have a weapon beneath his loose knit sweater, reached down attempting to feel his waistband and asked if he had any weapons. Samuel jerked away and Fania hollered "What's the matter with you guys, are you crazy?" Samuel said "These are fuckin' pig cops."

Moorhead told Samuel he was under arrest for delaying and obstructing his interview with Fania and for refusing to identify himself. Moorhead and Palmer held Samuel by the arms and Moorhead started to put handcuffs on him. Sensing Samuel was submitting, Moohead relaxed, just as Fania shoved him from the back, breaking his grip and allowing Samuel to twist free.

Samuel backpedalled away yelling, "My name is Samuel Jordan. This is my wife. This is a family problem. Leave us alone." Moorhead did not believe this because Fania had said her name was Davis. (It apparently did not occur to the deputies to inquire of Fania whether she was married to Samuel or whether she needed help.)

Moorhead again tried to arrest Samuel but he turned and ran toward and into the rear portion of a duplex on 26th Street. Moorhead chased him through the open door. Samuel grabbed a cancelled check from a coffee table and said, "This is my name, and you now know who I am. You know where I live. Get out of my house. You don't have a search warrant." Moorhead said it was too late for that, he was already under arrest. Moorhead and Samuel engaged in a struggle.

During the struggle, Moorhead saw a shotgun in a bedroom and scissors on the coffee table. Samuel tried to work his way toward the bedroom. Moorhead feared Fania might use the scissors as a weapon, looked back and saw her jerk her hand from his gun. Samuel hollered for Fania to go get help. She ran out the door, returning in 15 to 20 seconds with a young white male, who left upon Palmer's orders.

The deputies had dragged Samuel back into the living room and had him on the couch. Samuel was on Moorhead and Palmer was on Samuel.

Fania jumped on the pile, hitting Moorhead on the face with her hand causing a scratch. Samuel broke free and ran into the bedroom.

Moorhead ran after Samuel drawing his revolver as he thought Samuel would get the shotgun. Samuel came through the door with the shotgun pointed at Moorhead. Moorhead fired 5 shots at Samuel, 4 of which were deflected when Fania hit his hand. One shot wounded Samuel in the shoulder.

Samuel retreated into the bedroom. Moorhead heard what sounded like a round being jacked into the firing chamber of the shotgun.[1] He warned Palmer to take cover. Both deputies ran outside and took cover behind a large van. Palmer saw a slender, tall person with an Afro style natural hairdo appear at the brim of the roadway in front of the driveway. Two shots were fired. Debris stung Palmer's face at the time of the second shot.

## THE INDICTMENT

Based upon the testimony of the above event, the grand jury returned an indictment which alleges in substance (we will not impose upon our readers the verbatim allegations, couched in archaic legalese):

"Count One: Samuel Jordan assaulted Deputy Moorhead with intent to commit murder in violation of Penal Code Section 217.

"Count Two: Samuel Jordan assaulted Deputy Palmer with intent to commit murder in violation of Penal Code Section 217.

"Count Three: Fania Jordan assaulted Deputy Moorhead with intent to commit murder in violation of Penal Code Section 217.

"Count Four: Fania Jordan assaulted Deputy Palmer with intent to commit murder in violation of Penal Code Section 217.

"Count Five: Samuel Jordan committed an assault with a deadly weapon against a peace officer in violation of Penal Code Section 245(b).

"Count Six: Samuel Jordan committed an assault with a deadly weapon against a peace officer in violation of Penal Code Section 245(b).

"Count Seven: Fania Jordan committed an assault with a deadly weapon against a peace officer in violation of Penal Code Section 245(b).

"Count Eight: Fania Jordan committed an assault with a deadly weapon against a peace officer in violation of Penal Code Section 245(b).

---

[1]This would indicate the shotgun was unloaded when Samuel first came through the door with it.

"Count Nine: Samuel Jordan assaulted a peace officer in violation of Penal Code Section 241.

"Count Ten: Samuel Jordan assaulted a peace officer in violation of Penal Code Section 241.

"Count Eleven: Samuel Jordan willfully and unlawfully used force and violence upon the person of a peace officer in violation of Penal Code Section 243.

"Count Twelve: Samuel Jordan willfully and unlawfully used force and violence upon the person of a peace officer in violation of Penal Code Section 243.

"Count Thirteen: Fania Jordan willfully and unlawfully used force and violence upon the person of a peace officer in violation of Penal Code Section 243.

"Count Fourteen: Fania Jordan willfully and unlawfully used force and violence upon the person of a peace officer in violation of Penal Code Section 243.

"Count Fifteen: Samuel Jordan willfully and unlawfully prevented Deputy Moorhead, a peace officer, from performing his lawful duties by means of force and violence in violation of Penal Code Section 69.

"Count Sixteen: Samuel Jordan willfully and unlawfully prevented Deputy Palmer, a peace officer, from performing his lawful duties by means of force and violence in violation of Penal Code Section 69.

"Count Seventeen: Fania Jordan willfully and unlawfully prevented Deputy Moorhead, a peace officer, from performing his lawful duties by means of force and violence in violation of Penal Code Section 69.

"Count Eighteen: Fania Jordan willfully and unlawfully prevented Deputy Palmer, a peace officer, from performing his lawful duties by means of force and violence in violation of Penal Code Section 69."

## PROCEDURES

Samuel and Fania Jordan were initially charged by complaint with eight counts arising out of the same incident giving rise to this indictment. This complaint did not include the violations of Penal Code sections 241, 243 and 69 which are now charged. Before a preliminary hearing on the complaint could be held the district attorney obtained a grand jury indictment covering the same eight counts charged in the complaint. The district attorney then dismissed the complaint.

Samuel and Fania moved to set aside the eight-count indictment under Penal Code section 995. The motion was granted as to the four counts relating to Fania. It was granted as to two counts relating to Samuel, leaving two assault with intent to murder counts against him for the shots fired outside the house only. (At the first grand jury hearing Palmer referred to the person firing the shotgun outside the house as "he.") The court, in a thorough and well reasoned opinion, ruled further detention of Fania, after she identified herself, was unwarranted and there was no probable cause to pat down or arrest Samuel, at least after he demonstrated he and Fania were married. (At the first grand jury hearing Moorhead said the check Samuel showed him was to a joint account in the names of Samuel Jordan and Fania Jordan.) It was the court's position, generally, the police acted outside the scope of their authority and were aggressors at least up to the time they retreated from the house. (At the first grand jury hearing Moorhead testified he had applied and attempted to apply arm locks on Samuel while on Highway 101; in the house, he, Moorhead, had resumed the struggle by grabbing Samuel again, trying to put a sleeper hold on him.)

On April 6, 1970, Samuel petitioned this court under Penal Code section 999a; the district attorney's office informed this court it was not filing opposition to the petition; we denied the petition on April 20, 1970 (4 Civ. No. 10322); Samuel's petition for a hearing in the Supreme Court was also denied. While Samuel's unopposed petition was before this court, the district attorney obtained the expanded, 18-count grand jury indictment, filed April 15, 1970, which is here involved. This was not brought to our attention.

On June 10, 1970, Samuel and Fania moved to set aside the new indictment, quash the indictment and demurred to the indictment. On June 22, the court sustained the demurrer. On June 29, 1970, the day set for trial the court ordered the trial off calendar, since no new indictment had been returned following the sustaining of the demurrer. The People's appeal from this non-appealable order was dismissed on November 10, 1970, by this court.

On November 30, 1970, on its own motion, the superior court, based upon the order sustaining the demurrer, dismissed the action under Penal Code section 1008. This appeal is timely taken from that order of dismissal.

### ANALYSIS

■ The fundamental issue on this appeal is whether the indictment meets the constitutional requirement defendants be given adequate notice of the nature of the charges against them so they may prepare their defense and plead the judgment as a bar to any later prosecution for the same offense (*In re Hess,* 45 Cal.2d 171, 175 [288 P.2d 5]; *People* v. *Clenney,* 165 Cal.App.2d 241, 253 [331 P.2d 696]).

A demurrer may be sustained where the accusatory pleading ". . . does not substantially conform to the provisions of Sections 950 and 952, and also Section 951 in case of an indictment or information. . . ." (Pen. Code, § 1004.)

Section 952 provides: ". . . each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. . . . It may be in the words of the enactment describing the offense . . . or in any words sufficient to give the accused notice of the offense of which he is accused."

Does a bare literal compliance with section 952 obviate a demurrer under section 1004? We hold it does not, where such compliance fails to give the accused constitutionally adequate notice. *People* v. *Clenney, supra,* 165 Cal.App.2d 241, says a pleading in the words of a statute is not sufficient where the statute itself does not give constitutionally adequate notice of the offense. (There violation of the charged offense depended upon violation of another statute—both statutes must be set out.) *Clenney* deals with the first prong of the constitutional test—whether adequate notice of the nature of the charges is given by allegations in the language, or essentially in the language, of the statute.

Here the problem relates to the remainder of the constitutional requirement—whether this indictment gives adequate notice against what defendants must defend and whether there is sufficient certainty to allow a future plea in bar. Compliance with section 952 does not necessarily overcome a due process attack (*Choung* v. *People of State of California,* 320 F.Supp. 625, 629).

California's system of criminal pleading under section 952 relies in part upon the transcript of the grand jury hearing or preliminary examination which must be furnished to the defendant to inform him of particular circumstances of his offense not shown by the accusatory pleading (*People* v. *Anderson,* 55 Cal.2d 655, 657 [12 Cal.Rptr. 500, 361 P.2d 32]; *People* v. *Johnson,* 230 Cal.App.2d 80, 86 [40 Cal.Rptr. 711]). The district attorney first asserts the ruling on the demurrer must be tested only by reference to defects appearing on the face of the indictment, then attempts to distinguish the federal case of *United States* v. *Panzavecchia,* 421 F.2d 440, upon which the defendants and the court primarily relied, on the ground a federally indicted defendant is not entitled to a grand jury transcript.

Since the constitutional application of section 952 relies in part upon notice afforded by the transcript, it follows a demurrer under section 1004 for failure of the indictment to substantially conform to section 952 con-

templates testing the adequacy of the notice to defendant by allegations in the language of the statute *when viewed in light of the transcript.*

In five instances this indictment contains identical counts alleged against the same defendant without any distinction between the counts (i.e., counts 5 & 6 — Samuel, 7 & 8 — Fania, 9 & 10 — Samuel, 11 & 12 — Samuel, 13 & 14 — Fania). This is the precise form of pleading condemned in *United States* v. *Panzavecchia, supra,* 421 F.2d 440, 441, as failing to show with accuracy to what extent a defendant may in the future plead a conviction or acquittal on such charges as a bar. The lower court so found in sustaining the demurrer.

Illustrative of the constitutional problem involved would be the situation should Samuel be convicted by general verdict of a jury of assault on a police officer (count 9) but acquitted by general verdict of a jury of assault on a police officer (count 10). If on appeal his conviction were reversed, what evidence would be admissible on count 9 on retrial? Of what act had he been acquitted? This lack of clarity is not cured by reference to the transcript.

Remaining are the first four counts charging assault with intent to commit murder and the last four counts charging interference with a police officer. These are not subject to the *Panzavecchia* objection as each count refers to a different victim or to a different defendant. Here, however, consideration of the transcript shows a failure to comply with the constitutional requirement a defendant be adequately apprised of what he must be prepared to meet. It would be a simple matter to allege whether the assault with intent to commit murder as to each victim happened when the shotgun was brandished in the house (with Fania an aider and abettor) or when it was fired and by whom. These matters are of more than passing interest to the defense since there is an inference no shell was in the gun's firing chamber when it was brandished and the police may have been trespassers at that time. If the charge rests upon the outside firing, Samuel may want to prepare medical testimony showing one may be foolish enough to fire a shotgun once with a bullet wound in his shoulder, but would unlikely repeat the act.

Regarding the interference counts, importance attaches as to when in the course of the confrontation defendants prevented the police officers from performing their duties, since the officers may have exceeded the scope of their duties during some of the time. Also it is not clear as to whether the two charges against each defendant (contained in the last four counts) relate to one act which interfered with each officer or to separate acts interfering with the specified officer at different times and places. One act against two officers is but one offense and would not support two

counts. This is because the victim of the offense is not the individual officer, as in an assault, but is the state generally, for breach of the peace. One who by his act interferes with the law enforcement activity of a 500-member police riot squad does not commit 500 offenses, separately chargeable.

We emphasize our ruling relates to the situation presented by this case where multiple charges result from an extended course of activity. In the usual case, an accusation pleaded in compliance with section 952, when viewed in light of the transcript, provides sufficient notice to the defendant to withstand constitutional attack. ■ We hold only that where the accusatory pleading is attacked by a demurrer for failure to comply with constitutional requirements of notice and a consideration of the pleading and transcript leads to a conclusion uncertainty puts the accused to a material disadvantage, the court acts within its discretion by sustaining the demurrer and requiring more specific pleading. ■ Here the prosecution declined repleading its case. No abuse of the trial court's discretion appears.

The trial court relied in part upon a judicially declared right of a defendant to demand the People make an election of the acts upon which they rely as to specific counts (*People* v. *Williams,* 133 Cal. 165, 169 [65 P. 323]; *People* v. *Muniz,* 4 Cal.App.3d 562, 568, fn. 3 [84 Cal.Rptr. 501]). It is appropriate, where the defendants raise the issue at the pleading stage by demurrer, the election be exercised by amendment of the accusatory pleading rather than by some informal specifications which may or may not be effective. As noted in *People* v. *McPheeley,* 92 Cal.App.2d 589, 592 [207 P.2d 651] (quoting from *People* v. *Perfetti,* 88 Cal.App. 609, 615 [264 P. 318]): " 'When the particulars of an offense, or if in this case the particular results of the defendant's actions were not stated with sufficient clarity to satisfy the defendant or to enable him to more ably present his defense, it was his duty to demur thereto as provided by section 1004 of the Penal Code, or if more than one offense was charged, it was such duty.' (See also, *People* v. *Welton,* 190 Cal. 236, 238 [211 P. 802].)"

The order dismissing the action is affirmed.

Coughlin, J., and Whelan, J., concurred.