[Crim. No. 21449. Second Dist., Div. Five. Aug. 2, 1972.]

THE PEOPLE, Plaintiff and Appellant, v.
BEN HATHAWAY, Defendant and Respondent.

## Counsel

David D. Minier, District Attorney, and Patrick J. McKinley, Deputy District Attorney, for Plaintiff and Appellant.

Brelsford, McMahon & Butcher and Patrick L. McMahon for Defendant and Respondent.

## Opinion

**KAUS, P. J.**—On November 2, 1971, the District Attorney of Santa Barbara County filed a 22-count indictment in the superior court, charging defendant with 11 violations of section 72 of the Penal Code and 11 violations of section 14107 of the Welfare and Institutions Code. Defendant demurred and filed a motion to quash the indictment. After the matter was submitted for a ruling, the district attorney filed an amended indictment, which differed from the original only with respect to the specificity with which it described the offenses charged. Defendant demurred to the amended indictment and the matter was resubmitted. The demurrer was sustained with leave to amend. The People appeal.

### I.

Before reaching the merits, we must direct our attention to certain procedural problems encountered by the People in getting here. Although a motion to dismiss the appeal has already been denied by us, we did expressly preserve defendant's point that the delay caused by the proceedings which we are about to relate will necessarily deprive him of his right to a speedy trial. (Cf. *People* v. *Kerwin*, 23 Cal.App.3d 466 [100 Cal.Rptr. 240].)

In the case at bar the trial court filed its opinion and order sustaining the demurrer to the amended indictment on January 17, 1972. The People were given 10 days within which to file a second amended indictment. Apparently stung to the quick by that ruling, they did not amend, but noticed an appeal from the January 17 order exactly one week later, on January 24, 1972. The record was filed in this court on March 1 and the People's opening brief on March 14.

On April 7 defendant filed a motion to dismiss the appeal on the self-evident ground that no appealable judgment was in existence. The same

day, April 7, we ordered the motion to be heard on May 18, together with the appeal on its merits. Defendant was given until April 26 to file his brief, which deadline was met.

In the meanwhile the People unsuccessfully moved the trial court to enter a judgment *nunc pro tunc*. The motion was denied on May 4, the trial court being of the opinion that in view of the pendency of the appeal, it had no jurisdiction to grant it.

The motion to dismiss the appeal and the merits of the appeal were both argued before us on May 18, as previously ordered. With respect to the motion to dismiss we filed a written order on May 19. It is quoted in the footnote.[1] Responding to our suggestion on how to get this matter back on the track, a judgment of dismissal was filed on June 2. Pursuant to the May 19 order, the motion to dismiss was therefore denied and the appeal submitted on the merits.

The effect of all this was that an appeal from a judgment which could not have been entered before January 27, was submitted to us on the merits in just over four months. Nevertheless, relying on our opinion in *People* v. *Kerwin*, 23 Cal.App.3d 466 [100 Cal.Rptr. 240], defendant claims that no point would be served in deciding those merits, because in the event of a reversal he will necessarily be deprived of his right to a speedy trial.

Defendant misunderstands what we were trying to say in *Kerwin*. There a comedy of errors committed by various functionaries of the state had irretrievably delayed the processing of a People's appeal through this court by 90 days. We held, by analogy to section 1382, subdivision 2 of the Penal Code, that the inexcusable delay of more than 60 days would

---

[1]"The motion to dismiss the People's purported appeal is submitted. The court recognizes that no appealable judgment has been rendered. (*People* v. *Rehman*, 62 Cal.2d 135, 137-138.)

"If the superior court does not render an appealable judgment on or before June 7, 1972, the motion to dismiss will be granted. If an appealable judgment is rendered on or before said date, this court will exercise the discretion given to it by California Rule of Court 31(a) and treat the notice of appeal as having been filed immediately after the rendition of said judgment and, further, will interpret said notice as a notice of appeal from said judgment. (*Beazell* v. *Schrader*, 59 Cal.2d 577, 580.)

"The superior court is referred to its unquestioned power to render a judgment while a void appeal purports to be pending in this court. (See cases digested in 2-A McK.Dig. 'Appeal and Error' § 389.)

"In the event an appealable judgment is rendered on or before June 7, 1972, and the notice of appeal is treated as valid pursuant to this order then, a full record having been filed with this court and the matter having been briefed and orally argued on the merits, the cause will be immediately submitted on the merits.

"Nothing in this order shall be deemed to prejudice any contention of defendant and respondent that the People's attempt to appeal from a nonappealable order has denied or will deny him the right to a speedy trial."

deprive defendant of his right to a speedy trial, in the event the appeal resulted in a reversal. We therefore did not decide the merits.

Nothing of the kind has happened here. The record on the then non-existing appeal was promptly filed, as was the People's opening brief. The only time which could conceivably be characterized as wasted is the 22-day period which elapsed between the filing of the People's opening brief and April 7, during which time the defense may reasonably have devoted its energies to getting the appeal dismissed, rather than replying on the merits. Our order of April 7, which in effect telescoped the motion to dismiss into the appeal—or perhaps vice versa—prevented any further "dead time."

It is, of course, apparent that the avoidance of more extensive delay was due to this court's April 7 and May 19 orders. This troubles our conscience not one bit. The defendant has a right to a speedy trial, but no right to judicial indifference to its denial.[2]

## II.

Turning to the merits, it is easier to formulate the issues by listing defendant's grievances with respect to the indictment, than by enumerating the People's submissions of reasons why there is nothing wrong with it.

Defendant complains:

A. Section 14107 of the Welfare and Institutions Code was, with respect to offenses covered by section 14107, a *pro tanto* repeal of section 72 of the Penal Code.

B. The pleading of each count alleging a violation of section 14107 was duplicitous, in that it alleged two separate offenses; further, the prosecution was required to elect between the two offenses embraced in each count charging a violation of section 14107.

C. All 22 counts of the indictment must fall against defendant's claim

---

[2]Nothing herein is intended to preclude defendant from attempting to prove that he has been or will be denied due process because of preindictment delay of about 10 months. The record indicates that he has twice moved the trial court for a dismissal on that ground. The first time the motion was not acted on, the second time it was denied without prejudice. In his brief on the merits in this court, defendant suggests that, because of the delay, we should order the prosecution dismissed in furtherance of justice. We decline to do so, if for no other reason, because we simply do not know the facts on which the "delicate judgment based on the circumstances" of this case would depend. (*United States* v. *Marion,* 404 U.S. 307, 323-325 [30 L.Ed.2d 468, 480-481, 92 S.Ct. 455]; cf. *People* v. *Archerd,* 3 Cal.3d 615, 641 [91 Cal.Rptr. 397, 477 P.2d 421].)

that they do not give him notice of the exact offenses with which he is charged. (Pen. Code, § 952.)

## A.

### *Pro Tanto* Repeal

The odd-numbered counts of the amended indictment charge violations of section 72 of the Penal Code. Except for the alleged date of the offense and defendant's billing number involved, the language of each of these counts is identical.[3] Each of the even-numbered counts charges a violation of section 14107 of the Welfare and Institutions Code with respect to the same transaction referred to in the preceding odd-numbered count.[4] The trial court's memorandum opinion contains the following passage with respect to the claim that section 14107 of the Welfare and Institutions Code was a *pro tanto* repeal of section 72 of the Penal Code: "Ground I of the demurrer, that the Counts alleging a violation of Penal Code Section 72 do not state facts sufficient to constitute a public offense, is sustained. Section 14107 of the Welfare and Institutions Code is the statute specifically dealing with the offenses charged, and under the cases cited by defendant, the People cannot charge the same facts under the broader Penal Code Section. If only the violations of Penal Code Section 72 were alleged, a conviction under that section would be reversed. Here the amended indictment charges a violation of both sections. Since the appropriate section is 14107 of the Welfare and Institutions Code, and since causes of action are stated under the section, no cause of action can be stated for violating Penal Code Section 72." The line of cases relied on by the trial court and again relied on by the defendant on appeal is well known. It was most recently applied by our Supreme Court in *People* v. *Gilbert,* 1 Cal.3d 475 [82 Cal.Rptr. 724, 462 P.2d 580]. The rule was there quoted as follows: "As we stated in *In re Williamson* (1954) 43

---

[3]Count I of the amended indictment charges: "That on or about the 14th day of January, 1971 at and in the County of Santa Barbara, State of California, the said defendant BEN HATHAWAY did wilfully, unlawfully and feloniously with the intent to defraud, present for allowance and payment to a State Board and State Officer authorized to allow and pay the same if genuine, a false and fraudulent claim, bill, account, voucher and writing, to wit, a pharmacy service statement bearing pharmacy number 014479316."

[4]Count II of the amended indictment charges: "That on or about the 14th day of January, 1971, at and in the County of Santa Barbara, State of California, the said defendant BEN HATHAWAY did wilfully, unlawfully and feloniously with the intent to defraud, present for allowance and payment a false and fraudulent claim for furnishing services or merchandise, and did knowingly submit false information for the purpose of obtaining greater compensation than that to which he was legally entitled for furnishing services or merchandise, to wit, a pharmacy service statement bearing pharmacy number 014479316."

.Cal.2d 651, 654 [276 P.2d 593], 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.'" (1 Cal.3d at p. 479.)

We assume that section 14107, quoted in the footnote[5] should be held to be a *pro tanto* repeal of section 72 of the Penal Code, also quoted below,[6] were it not for the last sentence of section 14107: "The enforcement remedies provided under this section are not exclusive and shall not preclude the use of any other criminal or civil remedy."

Defendant urges that the People's reliance on a similar proviso was rejected in *People* v. *Gilbert, supra,* 1 Cal.3d 475, 481, footnote 5. That case held that the defendant could not be prosecuted under the general theft statute for fraud in failing to notify the authorities of a change in her eligibility to receive aid from the county, since section 11482 of the Welfare and Institutions Code was a special statute dealing with such conduct. This was so, in spite of the fact that section 11485 provides in part: "The enforcement remedies provided the district attorney under this article [sections 11475-11488] shall not preclude the use of any other remedy which he has under the law to enforce this article." The court held that section 11482 was not one of the many sections in "this article" which referred to the district attorney, and the provision quoted applied only to those sections which do name the district attorney. (*Id.* p. 481, fn. 5.)

■ Section 14107 of the Welfare and Institutions Code, however, does not so limit its proviso but rather refers broadly to "any other criminal or

[5]"Any person who, with intent to defraud, presents for allowance or payment any false or fraudulent claim for furnishing services or merchandise, knowingly submits false information for the purpose of obtaining greater compensation than that to which he is legally entitled for furnishing services or merchandise, or knowingly submits false information for the purpose of obtaining authorization for furnishing services or merchandise under this chapter is punishable by imprisonment in the county jail not longer than one year or in the state prison not exceeding five years, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment.

"The enforcement remedies provided under this section are not exclusive and shall not preclude the use of any other criminal or civil remedy."

[6]"Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable either by imprisonment in the county jail for a period of not more than one year, by a fine of not exceeding one thousand dollars ($1000), or by both such imprisonment and fine, or by imprisonment in the state prison for a period of not more than five years, by a fine of not exceeding ten thousand dollars ($10,000) or by both such imprisonment and fine."

civil remedy." Section 72 of the Penal Code clearly falls within this broad classification.

Furthermore, it should be noted that section 14107 was enacted by the Legislature after the decision in *People* v. *Gilbert, supra.* It seems very probable that the wording of the proviso to section 14107 was a response to the *Gilbert* decision's statement that "[i]f the Legislature wanted to retain the theft penalty in welfare fraud cases, it would have explicitly so stated." (*People* v. *Gilbert, supra,* at p. 481, fn. 5.) It was therefore error to sustain the demurrer to the counts charging violations of section 72 of the Penal Code on this basis.

## B.

### Duplicity and Election

■ Defendant claims that each of the even-numbered counts is duplicitous for the reason that section 14107 defines three different crimes, two of which—presenting a false claim and submitting false information to obtain greater compensation—are charged in each even-numbered count.

We disagree. The question whether a criminal statute is intended to create one or more offenses has been before the courts a number of times. An authoritative statement of the applicable principles will be found in *Bealmear* v. *So. Cal. Edison Co.,* 22 Cal.2d 337, 343 [139 P.2d 20]: "Various tests are applied in determining whether statutes are intended to create one or more offenses. The identity of intent fixed by the statute in the doing of all the prohibited acts is said to indicate a single offense. [Citation omitted.] Whether the indictable acts may be considered as representing a stage in the commission of the same offense is also a guide to construction."[7]

Both tests referred to in *Bealmear* indicate that the even-numbered counts on the amended indictment charge but one offense. The demurrer was improperly sustained on the ground of duplicity.

Our conclusion that each even-number count charges merely one crime, makes it unnecessary to discuss defendant's point that the indictment should have elected which crime to charge.

[7]A thorough review of the authorities is found in *People* v. *Allington,* 103 Cal. App.2d Supp. 911, 914-920 [229 P.2d 495].

## C.

### Uncertainty

Finally, defendant's demurrer to each count of the amended indictment was sustained "on the authority of *People* v. *Mahony,* 145 Cal. 104, and *People* v. *Butler,* 35 Cal.App. 357." These cases held that the indictments there involved did not give adequate notice of the offenses charged, as demanded by section 952 of the Penal Code. We do not doubt that *Mahony* and *Butler,* were they accurate statements of the law today, are sufficiently close to the facts of this case to justify the trial court's ruling.[8] The first question, then, is whether these cases are correct statements of present law.

At the time *Mahony* and *Butler* were decided—1904 and 1917, respectively—section 952 of the Penal Code provided: "[The indictment or information] must be certain and direct, as it regards—

"1. The party charged

"2. The offense charged

"3. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense." In 1927 the section was amended to substantially the language which it now contains.[9] This change in language, together with the enactment of legislation, starting apparently with the 1909 amendment to section 988 of the Penal Code (Stats. 1909, ch. 727) and culminating in section 938.1 of that code, providing that an accused is entitled to a transcript of the evidence presented to the grand jury relating to the charges against him, convince us that the authorities cited by the trial court do not warrant the reliance placed upon them. The indictment must be tested against the current law of criminal pleading and procedure, not against that of a bygone age.[10]

---

[8]Both cases upheld the sustaining of a demurrer to indictments charging violations of section 72 of the Penal Code.

[9]"In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made "in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused. . . ." Subdivisions 6 and 7 of section 959 of the Penal Code were also repealed in 1927. They provided that the act charged must "be clearly and distinctly set forth . . . in such a manner as to enable a person of common understanding to know what is intended. . . ." (See *People* v. *Jones,* 61 Cal.App.2d 608, 616 [143 P.2d 726].)

[10]Some doubt must be confessed whether the law of criminal pleading as exemplified in *People* v. *Butler, supra,* at pages 358-360 ever made much sense. There the indictment, charging a violation of section 72 of the Penal Code, is set out by the

■ Thus the sufficiency of the notice to defendant provided by the indictment must be tested not only in the light of the indictment itself, but also against the transcript of evidence presented to the grand jury. (*People* v. *Anderson,* 55 Cal.2d 655, 657 [12 Cal.Rptr. 500, 361 P.2d 32]; *People* v. *Jordan,* 19 Cal.App.3d 362, 369-370 [97 Cal.Rptr. 570]; *People* v. *Johnson,* 230 Cal.App.2d 80, 86 [40 Cal.Rptr. 711].)

■ The evidence presented to the grand jury relating to the charges against defendant, if uncontradicted, shows that defendant as owner of a pharmacy knowingly submitted for payment specifically identified claims for drugs and services which were not dispensed.

The transcript specifies with considerable particularity the acts which are alleged to have constituted each offense charged in the amended indictment. The evidence indicates that defendant filed claims for payment under the Medi-Cal program for services which he did not render, for drugs which he did not dispense at all, and for drugs more expensive than the ones he actually dispensed. The evidence clearly supports the inference that defendant committed these acts with knowledge that the claims were false, and with a specific intent to defraud the state. Furthermore, it is specified in the testimony which acts relate to each transaction listed in the indictment. (See *People* v. *Jordan,* 19 Cal.App.3d 362, 370-371 [97 Cal.Rptr. 570].)[11]

As to each count of the amended indictment defendant has been provided detailed notice of the specific offenses with which he is charged. The

court. The detail is exhaustive. Yet the appellate court upheld the reasoning of the trial court in sustaining defendant's demurrer, because the indictment contained "no allegation that [defendant] knew the claims presented . . . were false and fraudulent." While it is true that knowledge of the false nature of the claims is a necessary element of the offense, we would have thought that that element was supplied by the charge that the claims were presented "with the intent to defraud Sonoma County. . . ." (Cf. *Mullins* v. *Brando,* 13 Cal.App.3d 409, 414 [91 Cal.Rptr. 796].)

[11]For example as to counts I through IV there was evidence which indicates that defendant dispensed low cost "generic" drugs on prescriptions which called for "name-brand" drugs, but billed the Medi-Cal program for the higher priced "name-brand" drugs. The evidence as to counts V and VI shows that defendant, in addition to the fraud noted above, dispensed 100 tablets as called for in the prescription, but billed the Medi-Cal program as though he had dispensed 50, then at a later date refilled the prescription for another 50 tablets. Since the schedule of payments provides for a payment of $2.30 each time a prescription is filled, in addition to the cost of the drugs, the effect was to bill twice for the same service. The evidence as to counts XVII, XVIII, XXI and XXII, for example, indicates that defendant dispensed 35 tablets, yet billed for 60, and dispensed 40 tablets, yet billed for 60.

demurrer on the ground of noncompliance with section 952 of the Penal Code was therefore improperly sustained.

The judgment is reversed.

Stephens, J., and Cole, J.,* concurred.

A petition for a rehearing was denied on August 23, 1972, and the following opinion was then rendered:

**THE COURT.**—Defendant's petition for a rehearing in this court raises certain new issues or, more accurately perhaps, makes several new arguments explaining why the judgment was correct and why he has been—or will be—denied a speedy trial. Some deserve an answer.

1. Defendant points out that if the trial court had jurisdiction over the cause until June 2, 1972, he certainly was not brought to trial within 60 days "after the indictment." (Pen. Code, § 1382, subd. 2.)

There was, of course, no way to bring defendant to trial after the demurrer to the amended indictment had been sustained. While it is correct that the trial court had jurisdiction over the cause while it led its early half-life on appeal, the only thing it could have done during that time was to enter a judgment of dismissal, which it eventually did. Our opinion shows that, realistically, the People's procedural error in taking a premature appeal delayed the restoration of the case to the trial court's calendar for further proceedings for just a few days.

It is, of course, also significant that any delay in the commencement of an actual trial will be due to defendant having procured an erroneous ruling on his demurrer.

2. For the sake of argument only, defendant reluctantly accepts our holding that the even-numbered counts of the indictment charge only one crime. He now contends that the pleading of those counts is still bad because it charges disjunctively that defendant submitted false claims for "services *or* merchandise," violating a rule of pleading first announced in this state in *People* v. *Tomlinson,* 35 Cal. 503, at page 508. (See McK. Dig., Indictment and Information, § 69.)

Only a most charitable reading of defendant's earlier submissions either here or in the trial court leads to the conclusion that this particular point has ever been made before. So far the argument has been that the even-

---

*Assigned by the Chairman of the Judicial Council.

numbered counts were duplicitous—in other words, that they charged several crimes; now, it is that the single crime charged is not alleged with sufficient certainty. (Cf. *People* v. *Bowman,* 156 Cal.App.2d 784, 794 [320 P.2d 70].)

In any event, the transcript of the grand jury proceedings adequately apprises defendant whether or not a particular count relates to services or merchandise.

3. Defendant is chagrined that our opinion contains a statement to the effect that the evidence presented to the grand jury, if uncontradicted, shows that defendant knowingly submitted claims for drugs and services which were not dispensed. He accuses us of prejudging motions under sections 995 and 1538.5 of the Penal Code which he has not yet even made.

It is hard to see how anything in our opinion could be thought to relate to a motion to suppress illegally obtained evidence. As far as a motion under section 995 of the Penal Code is concerned, it cannot be denied that there is a certain overlap between the legal issues posed by a 995 motion and those presented by a demurrer on the ground that the facts alleged in the indictment do not constitute a public offense where, in ruling on the demurrer, the court looks—as it may—to the grand jury transcript. For present purposes, suffice it to say that the propriety of a ruling under section 995 is not before us.

Respondent's petition for a hearing by the Supreme Court was denied October 18, 1972.