[Crim. No. 12098. Fourth Dist., Div. Two. Nov. 16, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
EARL MARLOW MYERS et al., Defendants and Appellants.

COUNSEL

Eric A. Andrus and Carlo Andreani, under appointments by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Patricia D. Benke and Richard D. Hendlin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GARDNER, P. J.—In this case we hold that a trial court may consider enhancement allegations in determining whether the accusatory pleading alleges an included offense. More importantly, we request that the Supreme Court grant a hearing in this case in order to resolve a troublesome conflict on this issue which has arisen between divisions of the Courts of Appeal.

Charged with attempted murder, the defendants were found guilty by a jury of assault with a deadly weapon. Use and great bodily injury allegations were found to be true.

Sherry Lowe, a white woman, and Ronald Kelley, a black man, went to a party. As they left the party, they were confronted by a group of white men wearing T-shirts which carried the emblem SWP, an acronym for "Supreme White Pride." One of these individuals, Glen Filkins, called Kelley a "nigger" and berated him for being with a white woman. Lowe went back to the party for help. Filkins and the others then beat Kelley into unconsciousness. Lowe returned with Ken Davis, Kay Law, Lynette Wilson and eventually Dwight Scruggs, the victim. The defendants, Gooch and Myers, were part of the Supreme White Pride group which had accosted Kelley. When the others from the party came out, Gooch told Myers to get a gun. Myers ran to a nearby apartment and returned with a shotgun. Scruggs remonstrated with the Supreme White Pride group and they jumped him. One of them, Joseph Elliott, whose case was severed from that of these defendants, held off the rest of the party with a shotgun as Gooch and Myers went to work on Scruggs. Gooch stabbed Scruggs in the stomach and Myers stabbed him in the back. As Scruggs went down, Myers kicked him in the head.

In defense, Filkins, who had pled guilty to assault by means of force on Kelley and had been sentenced to prison, attempted to accept the full responsibility for the assault on Scruggs. The jury did not buy it.

■ Defendants make numerous contentions only one of which has precedential value.

Defendants contend that since the allegations in the information charge attempted murder, they could not be convicted of assault with a deadly weapon since that offense was not a necessarily included offense.

■ There are two tests for necessarily included offenses.[1]

The first is where one offense cannot be committed without committing the other. (*In re Hess* (1955) 45 Cal.2d 171 [288 P.2d 5].) ■ Obviously, assault with a deadly weapon is not a necessarily included offense to attempted murder under this test since attempted murder may be committed without committing an assault with a deadly weapon. (*People* v. *Meriweather* (1968) 263 Cal.App.2d 559 [69 Cal.Rptr. 880].)

■ The second test is where the elements of the lesser offense are covered by the language of the accusatory pleading even though these elements are not necessarily encompassed within the statutory definition of the charged crime. (*People* v. *Marshall* (1957) 48 Cal.2d 394 [309 P.2d 456].)

■ The question presented is whether enhancement allegations may be considered in this respect.

---

[1]At one time there was a third test which has just been rejected by the Supreme Court in *People* v. *Lohbauer* (1981) 29 Cal.3d 364 [173 Cal.Rptr. 453, 627 P.2d 183]. That test, espoused by *In re Walter S.* (1980) 105 Cal.App.3d 475 [164 Cal.Rptr. 442]; *In re Beverly H.* (1980) 103 Cal.App.3d 1 [162 Cal.Rptr. 768]; *People* v. *Muis* (1980) 102 Cal.App.3d 206 [163 Cal.Rptr. 791]; and *People* v. *Cole* (1979) 94 Cal. App.3d 854 [155 Cal.Rptr. 892], held that any variance between the charged offense and the lesser offense on which a defendant was ultimately convicted would be deemed material only if the defendant was misled to his prejudice and prevented from preparing an effective defense. *Lohbauer* held that this rationale was based on the misreading by those cases of the Supreme Court's holding in *People v. Collins* (1960) 54 Cal.2d 57 [66 Cal.Rptr. 497, 438 P.2d 33, 36 A.L.R.3d 1176]. *Lohbauer* disapproved those cases and that test no longer exists.

Here, the basic allegation in the information is that these two defendants unlawfully attempted to murder Mr. Scruggs. The information then goes on to allege at the time of this offense each was armed with a firearm, that each used a deadly weapon, and that they inflicted great bodily injury on Mr. Scruggs. All of these latter allegations were enhancement allegations under Penal Code sections 12022.5 and 12022.7.

It would appear that the language of the accusatory pleading has clearly set forth all of the elements of the crime of assault with a deadly weapon. But, as we shall see, some cases have held it does not.

In times past the law's zeal for precision made criminal pleading a procedural nightmare. Because the charge was made after secret sessions of a grand jury or unreported preliminary examinations before a committing magistrate, it was considered necessary to include practically all the evidentiary allegations in the accusatory pleading. Otherwise, the defendant had no real notice of the facts against which he was to defend. Thus, "Early criminal pleading was lengthy, particular, detailed and full of technicalities, and often led to reversal for variance despite convincing evidence of guilt at trial." (Witkin, Cal. Criminal Procedure, p. 175.) Today with reported grand jury proceedings and reported preliminary examinations, the defendant receives full notice of all of the details of the offense charged against him. Thus the Legislature has established the modern rule on simplified pleading in "... any words sufficient to give the accused notice of the offense of which he is accused." (Pen. Code, § 952.)

The basic requirement of an accusatory pleading is that it afford the defendant notice. "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*In re Hess, supra,* 45 Cal.2d 171, 175.)

The simplified proceeding now allowed meets the requirements of federal due process and has received approval in many opinions. The following is typical: "By this argument respondent attempts to lead the court back through the mazes of technical pleading the absurdities of which moved the Legislature almost twenty years ago to amend sections 951, 952, 954, 956 and 959 of the Penal Code so as to simplify and

modernize the archaic rules of pleading theretofore governing indictments and informations." (*People* v. *Silver* (1946) 75 Cal.App.2d 1, 3 [170 P.2d 80].) Also in *People* v. *Hathaway* (1972) 27 Cal.App.3d 586 at p. 594 [103 Cal.Rptr. 638], the court said: "The indictment must be tested against the current law of criminal pleading and procedure, not against that of a bygone age."

Thus, consistent with this modern philosophy of simplified pleading, the Supreme Court in *People* v. *Marshall, supra*, 48 Cal.2d 394, developed a concept of the included offense based on the accusatory pleading. Under this theory, a lesser offense is necessarily included if it is within the facts specifically set forth in the accusatory pleading even though its elements are not necessarily within those of the statutory definition of the crime.

■ Nevertheless, in the face of this statutory and judicial philosophy, a series of cases has held that enhancement allegations may not be considered in determining whether an accusatory pleading alleges an included offense. They are *People* v. *Cole* (1979) 94 Cal.App.3d 854 [155 Cal.Rptr. 892]; *People* v. *Salas* (1978) 77 Cal.App.3d 600 [143 Cal.Rptr. 755]; *People* v. *Wilson* (1976) 62 Cal.App.3d 370 [132 Cal.Rptr. 813]; *People* v. *Benjamin* (1975) 52 Cal.App.3d 63 [124 Cal.Rptr. 799]; and People v. *Orr* (1974) 43 Cal.App.3d 666 [117 Cal.Rptr. 738].

*Orr* held that an enhancement allegation could not be considered because that allegation did not create any substantive offense. *Orr* said that its holding was a "logical sequence" of *People* v. *Henry* (1970) 14 Cal.App.3d 89 [91 Cal.Rptr. 841]. *Benjamin, Wilson, Salas* and *Cole* simply followed *Orr*.

Then Justice Feinberg in *People* v. *McGreen* (1980) 107 Cal.App.3d 504 [166 Cal.Rptr. 360], took a hard look at *Orr* and did not like what he saw. In a scholarly analysis he demolished *Orr*. He pointed out that *Orr* was not a logical consequence of *Henry* and that Penal Code section 969d makes a use allegation a part of the substantive criminal charge pled.[2]

---

[2]Section 969d provides in relevant part: "Whenever a defendant used a firearm as recited in section 12022.5 the fact that the defendant used a firearm may be charged in the accusatory pleading. This charge, if made, shall be added to and be a part of the count or each of the counts of the accusatory pleading which charged the offense."

More recently, *People* v. *Wolcott*█ (Cal.App.), chose to follow *McGreen* although that division had originally authored *Cole, supra,* 94 Cal.App.3d 854, *Wolcott* advised that after reading the analysis in *McGreen*, "We find the rationale of *McGreen* compelling." So do we.

*McGreen* recognizes the reality of contemporary, simplified pleadings and correctly analyzes Penal Code section 969d which provides that the enhancement provisions shall *be a part of* the counts of the accusatory pleading.

Here, the accusatory pleadings charged the defendants with attempt to murder Mr. Scruggs. It also alleged that they were armed with a firearm, used a deadly weapon and inflicted great bodily injury on him. Facts supporting these allegations were presented at the preliminary examination. One wonders just how much more notice any defendant is entitled to. Every fact necessary to charge the offense of assault with a deadly weapon has been alleged. The fact that some of these charges appear on certain lines of the accusatory pleading and the other facts appear on other lines is simply immaterial. Making such a distinction in the face of Penal Code section 969d is simply a return to the "bygone age" of pleadings mentioned in *Hathaway, supra,* 27 Cal.App.3d 586.

In all fairness and to indicate a modicum of intellectual integrity, we would point out that the rationale of *Orr* and its progeny is not entirely without merit.

Enhancement allegations are not a part of the specific language of the accusatory pleading which sets forth the substantive offense. *Marshall*, on which *McGreen* relied, did not specifically hold that *all* language of the accusatory pleading must be considered. *Marshall* permitted a review of the language of the offense which was pled. Also, numerous cases have held that enhancement allegations do not prescribe an offense but merely relate to the penalty to be imposed. (*People* v. *Superior Court (Grilli)* (1978) 84 Cal.App.3d 506 [148 Cal.Rptr. 740]; *People* v. *Najera* (1972) 8 Cal.3d 504 [105 Cal.Rptr. 345, 503 P.2d 1353]; *People* v. *Henry, supra,* 14 Cal.App.3d 89.) For example, in *Grilli*, the court held that the enhancements may not be at-

tacked in a Penal Code section 995 motion as that in no way involves an offense but merely prescribed a penalty to be imposed.

Additionally, we are certainly opening a can of worms insofar as the trial courts are concerned. *Sua sponte* instructions have already become a nightmare. We add one more burden to the already crushing load the trial courts must carry. Now, in addition to searching the substantive offense in the accusatory pleading for *sua sponte* possibilities, the court must study and consider the enhancement provisions. This is no trifling matter since almost all assaultive crimes include some enhancement allegations. So while our position may be conceptually sound, it is pragmatically troublesome. The important factor is that the Supreme Court act and act promptly in this troublesome field because this whole mess must leave the trial courts in a state of considerable bewilderment.

The present lineup of cases considering the question of whether or not enhancement allegations can be considered in ascertaining whether or not to instruct on included offenses goes something like this:

The answer is "no" in the Third District (*Orr*), in the Fifth District (*Benjamin*), and in the Second Division of the Second District (*Salas*). The answer is "yes" in the First Division of the First District (*Walcott*) —(retreating from *Cole* which came from the same division), in the Third Division of the First District (*McGreen*)—(which completely ignored *Wilson* which had come from that same division), and the Second Division of the Fourth District (this case—*Myers* and *Gooch*). To complete the confusion, the Supreme Court had denied hearings in *Salas* ("no") and *McGreen* ("yes").[3]

The balance of defendant's numerous contentions are without precedential value and were we afforded the luxury of partial publication, would be furnished by separate nonpublished memoranda to the par-

---

[3]The author of this opinion must admit with some embarrassment that he has in several unpublished opinions taken a diametrically opposite position to that taken in this case. Cowardly recourse is had in two hoary maxims:

(a) A foolish consistency is the hobgoblin of little minds; and

(b) Wisdom too often never comes, and so one ought not to reject it because it comes too late.

ties. As an alternative, we merely list these contentions and the answers thereto in the following footnote.[4]

---

[4](1) Defendant Myers also contends there is insufficient evidence to support the judgment. Not so.

 Under applicable rules of appellate review, we view the evidence in the light most favorable to the judgment and presume in support of the judgment the existence of every fact the trier of fact could deduce from the evidence. (*People* v. *Gale* (1973) 9 Cal.3d 788 [108 Cal.Rptr. 852, 511 P.2d 1204].) In this aspect the defendant basically takes issue with the testimony of Kay Law, the principal prosecution witness. However, confusion or lack of clarity on the part of a witness does not make that witness' testimony inherently improbable. To meet that standard, there must either be a physical impossibility that the evidence is true or its falsity must be apparent without resort to inference or deduction. (*People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal. Rptr. 467, 523 P.2d 267].) A witness to a gang fight is not held to the same precision as a surveyor testifying to a property line or a title officer testifying to a chain of title.

 The testimony of Ms. Law together with the rest of the evidence amply supports the judgment. It reasonably inspires confidence and is of solid value. (*People* v. *Redmond* (1969) 71 Cal.2d 745 [79 Cal.Rptr. 529, 457, P.2d 321].) A rational trier of fact could find the essential elements of the crime charged beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738].)

(2) Defendant Myers also contends that there is insufficient evidence to support the great bodily injury finding under *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274].)

It is true that Gooch inflicted the major injury on the victim. Nevertheless, Myers stabbed him in the back and kicked him in the head. The victim was in the hospital for 10 days and had a suture in his head, back and over his eye. These injuries were significant and substantial. The great bodily injury allegation was well established.

(3) Defendant Myers next contends that the seven years received, i.e., the upper term of four years plus three years for the great bodily injury enhancement constitutes cruel and unusual punishment because voluntary manslaughter does not carry that heavy a sanction. Manslaughter goes to six years without even any allegation of malice. Here, we have an assault with a deadly weapon and the infliction of great bodily injury. This is more reprehensible than a killing without malice. It reflects a deliberate, serious and malicious intent which under the circumstances warrants the sentence imposed.

(4) Defendant Myers also contends that the judge improperly made use of the great bodily injury facts to aggravate and enhance his sentence. This is not so.

While the probation officer did make improper use of these allegations, the trial judge made it very clear that he did not use the allegations in a dual sense. The trial judge found that circumstances in aggravation greatly outweighed circumstances in mitigation, that the crime involved great viciousness and cruelty, that the victim was particularly vulnerable, that the defendant was engaged in a pattern of violent conduct which indicated a serious danger to society, that as an adult and as a juvenile he had a prior performance on probation which was highly unsatisfactory, that his crimes were becoming increasingly serious, and that the only factor in mitigation was that performance on parole was brief. There was no error.

(5) Defendant Gooch contends that the trial court erroneously denied his motion for new trial which was made on the ground of newly discovered evidence.

A prosecution witness, Keith Matcham, testified that while he was in jail with defendant Myers that defendant said there was a fight and that he, Myers, obtained a shotgun and chased everyone away after a party where someone was stabbed. At no time did Matcham's testimony implicate Gooch. Then when the case was over, it was

Judgments affirmed.

Morris, J., and Tamura, J.,* concurred.

Appellants' petitions for a hearing by the Supreme Court were denied February 17, 1982. Broussard, J., was of the opinion that the petitions should be granted.

---

discovered that Matcham was a fugitive from Florida with a criminal background. This information was the basis for a new trial. In no way did it require a new trial. In the first place, there is no showing that this information would have even been admissible but even if it had been, it would not have changed the picture one iota. Matcham's statement was innocuous insofar as Gooch was concerned. It was virtually exculpable. It never implicated Gooch in any way. As Gooch's trial counsel candidly admitted, this information did not mandate a new trial.

(6) Defendant Gooch also contends, based on *People v. Kennedy* (Cal.App.), that the denial of the new trial re Matcham's testimony constituted a violation of his right to confrontation. Not so.

As indicated, Matcham's testimony was of trifling value. He was not an eyewitness to the crime. Eyewitnesses were called and testified and were subject to cross-examination. This is a far cry from the factual situation in *Kennedy*.

(7) ▮ Defendant Gooch also contends that there was jury misconduct. There was not.

*During deliberations*, jurors made comments concerning the guilt of these defendants. This is a perfectly normal situation since such comments are usually made during jury deliberations. If we are going to grant new trials every time some juror says during jury deliberations that he thinks a defendant is guilty, then we might as well do away with jury trials. In the cases relied on by this defendant, jurors had expressed opinions as to the defendant's guilt prior to deliberations. However, the statements made in this case are simply the kind of statements any juror is going to make during deliberations.

(8) Defendant Gooch also complains because the jurors said they had to get through because the judge was waiting, or that they had school examinations or eye appointments. This is not juror misconduct.

It is the kind of thing that occurs in almost every jury trial, and there is no showing that any of these affected the jury deliberation.

(9) Defendant Gooch contends that his enhancement under Penal Code section 12022.7 for great bodily injury is erroneous based on *People v. Gray* (1979) 91 Cal. App.3d 545 [154 Cal.Rptr. 555].

*Gray* had to do with that section prior to its amendment on January 1, 1979. This offense took place on January 6, 1979. Under that section as it read at that time, the enhancement was proper.

---

*Retired Associate Justice of the Court of Appeal, assigned by the Chairperson of the Judicial Council.